UNITED STATES of America, Appellee,

v.

Leroy JACKSON, Appellant.

No. 77–1075.

United States Court of Appeals,
Fourth Circuit.

Argued May 3, 1977.

Decided Oct. 18, 1977.

H. Duncan Garnett, Jr., Newport News, Va. (Jones, Blechman, Woltz & Kelly, Newport News, Va., on brief), for appellant.

Roger T. Williams, Executive Asst. U. S. Atty., Norfolk, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before CRAVEN,* Circuit Judge, FIELD, Senior Circuit Judge, and THOMSEN, Senior District Judge.**

FIELD, Senior Circuit Judge:

The issue on this appeal as framed by both counsel for the defendant and the Government is whether the trial court's refusal to consider a plea agreement which includes a sentence recommendation by the attorney for the Government constitutes an abuse of discretion which would permit the defendant to withdraw his plea of guilty. While we doubt that on the facts of this case the issue is of such dimensions, we will dispose of the appeal on that basis.

The defendant, Leroy Jackson, was indicted by a federal grand jury for operating a lottery or numbers game in violation of 18 U.S.C. § 1955. Thereafter, counsel for the defendant and an assistant U. S. Attorney entered into negotiations resulting in a plea bargain which was confirmed by a letter dated October 20, 1976, from the U. S. Attorney's office to defense counsel. Under the bargain, Jackson was to enter a plea of guilty to the charge in the indictment and the Government was to recommend a sentence of one year with the designation that it be served at a state penal institution

* Judge Craven died before preparation of this opinion.

** Roszel C. Thomsen, District of Maryland, sitting by designation.

which, of course, would have the effect of making the federal sentence run concurrently with that imposed by a state court.[1]

The case had been set on the docket of the Newport News division which is ordinarily presided over by one of the three judges who have their official station in that area. In the letter of October 20th, the assistant U. S. Attorney advised defense counsel that he did not know which of the three judges would be in Newport News on the date set for arraignment, and alerted him to the fact that Judge Clarke, one of the three judges, had indicated on other occasions that he did not care to have recommendations for sentences from the U. S. Attorney's office.

On October 22, 1976, Judge Clarke was presiding in Newport News when Jackson's case was called for arraignment. The court inquired about the plea bargain and the assistant U. S. Attorney advised that it was set forth in the letter directed to defense counsel. The district judge stated that it was his practice not to accept a specific recommendation and in the ensuing colloquy between the court and counsel it was quite clear that the judge would give no consideration to the recommendation in the plea agreement. The court then suggested that counsel for the defendant discuss these developments with Jackson, and a recess was called for that purpose. Thereafter, Jackson and his counsel returned to court, and after Judge Clarke had meticulously complied with the requirements of Rule 11, Jackson entered his plea of guilty. Disposition of the case was continued for one month for preparation of a presentence report, and on November 22, 1976, Jackson was sentenced to a term of three years with the provision that it should run consecutively to the state sentence he was serving.

Upon this appeal, Jackson does not contend that the Government failed to live up to the plea bargain which it had made with his counsel, cf. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); nor does Jackson contend that there were any covert assurances or other arrangements which misled him or influenced him to enter his guilty plea, cf. *Allison v. Blackledge*, 533 F.2d 894 (4 Cir. 1976), aff'd sub nom *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). On the contrary, counsel concedes that Jackson's plea was entered after he had been fully advised that the district judge had rejected the plea bargain in its entirety and declined to accept any recommendation with respect to a proposed sentence. In the light of these concessions it is clear that Jackson's plea was entered voluntarily and intelligently and with a full understanding of the consequences thereof. Under these circumstances we find Jackson's challenge of his guilty plea solely on the ground that the district court arbitrarily declined to consider any plea bargain to be without merit.[2]

Plea bargaining which had long lurked in the shadows of criminal jurisprudence was finally brought into the open and recognized in *Santobello v. New York*, supra, where the Court stated:

"The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered it is to be encouraged. * * *

Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for

1. Jackson had been convicted of a violation of Virginia law in the Circuit Court of the City of Newport News and was serving a term of 5 years under that conviction.

2. We are not at all sure that Judge Clarke arbitrarily refused to countenance any plea bargaining whatsoever since he stated only that he declined to be bound by any recommendation for sentence from the U. S. Attorney. "An agreement reached after 'plea bargaining'

may encompass much more than the prosecutor's agreeing to recommend a particular sentence to the sentencing judge. * * * Only one option normally available for offering by the prosecutor, a sentence recommendation by the prosecutor to the sentencing court, was apparently foreclosed by the trial court in this case." *United States v. Maggio*, 514 F.2d 80, 90 (5 Cir. 1975).

many reasons." 404 U.S. at 260, 261, 92 S.Ct. at 498.

*Santobello* made clear, however, that any plea bargain and all of its details should be disclosed to the court and placed on the record. "The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known." 404 U.S. at 261, 262, 92 S.Ct. at 498. It was largely responsive to these observations of the Court that Rule 11 of the Federal Rules of Criminal Procedure, was amended in 1975 by expanding the scope of the court's inquiry in subdivision (d) and the addition of subdivision (e).[3]

**3.** Subdivision (d) as amended and subdivision (e) read in pertinent part as follows:

(d) *Insuring That the Plea is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney.

(e) *Plea Agreement Procedure.*

(1) *In General.* The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case. The court shall not participate in any such discussions.

(2) *Notice of Such Agreement.* If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. Thereupon the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

Subdivision (e) of Rule 11 spells out the guidelines to be observed by the court and counsel in plea agreement procedures, but the Rule leaves to the court the option of whether it will accept or reject the plea agreement.[4] While the Rule is silent with respect to the authority of the court to decline to countenance any plea bargaining whatever, such a prerogative was recognized by the Congress in its consideration of the Federal Rules of Criminal Procedure Act of 1975, P.L. 94–64, 89 Stat. 370. The proposed subdivision (e) had been criticized by some federal judges who read it to mean that consideration of plea agreements was mandatory. However, in their

(3) *Acceptance of a Plea Agreement.* If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) *Rejection of a Plea Agreement.* If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

**4.** Of course, no trial judge is required to accept a "Type C" plea agreement, i. e. an agreement that a specific sentence is the appropriate disposition of the case. *See* Rule 11(e)(1)(C), set out in footnote 3, above. Such an agreement, if accepted by the judge, binds him to impose the agreed sentence. The agreement with respect to appellant, however, was a "Type B" agreement, where the attorney for the Government agreed to make a recommendation for a particular sentence, which Rule 11(e)(1)(B) clearly provides "shall not be binding on the court". If the defendant knowingly and voluntarily enters or adheres to a guilty plea with the understanding that the judge will not be bound by the recommendation of the Government's attorney, the judge may impose a greater sentence than that recommended by the Government. This provision was approved by the Advisory Committee on Criminal Rules, the Standing Committee on Rules of Practice and Procedure, the Judicial Conference of the United States, and the Supreme Court of the United States and was permitted to go into effect by the Congress.

testimony before the Congressional committee, the members of the Advisory Committee on Criminal Rules stressed that the Rule does not require that a court permit any form of plea agreement to be presented to it. On this point the report of the House Judiciary Committee stated:

"Rule 11(e) as proposed permits each federal court to decide for itself the extent to which it will permit plea negotiations to be carried on within its own jurisdiction. *No court is compelled to permit any plea negotiations at all.* Proposed Rule 11(e) regulates plea negotiations and agreements if, and to the extent that, the court permits such negotiations and agreements."

(Emphasis Supplied). H.Rep. No. 94–247, 1975 U.S.Code Cong. & Admin.News p. 678.

In our opinion each individual judge is free to decide whether, and to what degree, he will entertain plea bargains, and his refusal to consider any plea bargaining whatsoever will not vitiate a guilty plea which has otherwise been knowingly and voluntarily entered.

██ It should be noted, however, that Rule 32(a)(1), after providing a right of allocution to a defendant and his attorney, states: "The attorney for the Government shall have an equivalent opportunity to speak to the court." In the instant case the record shows that after the defendant had entered his plea, and after the probation officer had made his presentence report, the attorney for the defendant made an appropriate statement and the defendant was given an opportunity to speak. It does not appear that the attorney for the Government was offered such an opportunity. If such a request had been made and refused, it might be necessary to strike the sentence and remand the case for the imposition of sentence after the attorney for the Government had been afforded an opportunity to speak to the court. However, it does not appear that either the attorney for the Government or the attorney for the defendant requested that the attorney for the Government be asked if he had anything to say. Under these circumstances, the judgment, including the sentence, must be affirmed.

We can appreciate the dilemma of the U. S. Attorney and defense counsel in conducting plea negotiations where there is a marked divergence among the several judges in one division with respect to plea bargains. It would, of course, be highly desirable for all of the judges in a multi-judge division to adopt a uniform policy with respect to plea bargaining, but this is a matter that lies solely within the discretion and good judgment of the district judges.

The judgment of conviction is affirmed. *AFFIRMED.*