404 S.E.2d 763

**STATE of West Virginia ex rel. William C. FORBES, Prosecuting Attorney for Kanawha County, Petitioner,**

v.

**Honorable Tod J. KAUFMAN, Judge of the Circuit Court of Kanawha County, and Willie "Doc" Williams, Respondents.**

**No. 19855.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 1991.

Decided April 25, 1991.

---

W. Warren Upton, Jackson & Kelly, Andrew A. Raptis, Charleston, for respondents.

Mary Beth Kershner, Assistant Pros. Atty., Charleston, for petitioner.

McHUGH, Justice:

In this original proceeding, the petitioner, William C. Forbes, Prosecuting Attorney of Kanawha County, seeks to prohibit the respondent, the Honorable Tod J. Kaufman, Judge of the Circuit Court of Kanawha County, from imposing a sentence on the defendant, Willie "Doc" Williams, in Felony Action No. 89–F–324(I), which is contrary to the sentence provided for in the plea agreement entered into by the defendant and the petitioner on January 17, 1990. The petitioner contends that, pursuant to Rule 11(e)(3) of the *West Virginia Rules of Criminal Procedure,* the respondent was required to either reject the plea agreement, or accept it and be bound by all of its provisions, and that the respondent had no authority to accept the guilty plea and reject the sentence provided in that agreement. We do not believe the respondent exceeded his authority by accepting the guilty plea and rejecting the sentence in the plea agreement, and therefore, the writ is denied.

On July 21, 1989, the defendant was videotaped breaking and entering a "Subway Sandwiches" restaurant in Charleston, West Virginia. Approximately one month after the breaking and entering, the defendant was questioned by the Charleston Police Department about a recent burglary in the Charleston area and was found to be in possession of one of the articles taken in the burglary. Following his arrest, the defendant confessed, not only to that burglary, but also to several other burglaries in the same area. The defendant had also been arrested previously for selling crack cocaine to an informant of the Charleston Police Department on April 2, 1990.

The defendant was indicted on nine charges. He subsequently negotiated a plea agreement with the prosecuting attorney which provided that the defendant would plead by way of information to the sale of crack cocaine and to three other felonies. In exchange for his plea, the prosecuting attorney agreed not to prosecute on the other charges. The plea agreement further provided that the defendant would serve a sentence on the cocaine charge which would run concurrently with the three felony charges, with the three felony charges to run consecutively. The defendant agreed to the plea agreement on January 17, 1990.

The defendant appeared before the respondent to enter his plea on January 18, 1990. The respondent reviewed the four guilty pleas and the plea agreement, and questioned the defendant as to whether he understood the legal effect of the pleas and the plea agreement. The respondent advised the defendant that he was not bound by the sentence provided for in the plea agreement, and that the defendant should realize that when he makes his plea, the respondent would make the final determination of the sentence to be imposed. Upon accepting the defendant's guilty pleas, the respondent sentenced him to four concurrent sentences.

Two months later, the petitioner filed a motion to vacate the plea and sentence. While the petitioner's motion to reconsider the sentence imposed was pending before the respondent, the defendant was indicted by the state on those charges the state had agreed in the plea agreement not to prosecute.

A hearing on the motion to vacate the sentence was held on May 29, 1990. After hearing the parties' arguments, the respondent interpreted the plea agreement as a guilty plea with a sentencing recommendation pursuant to *W.Va.R.Crim.P.* 11(e)(1)(B), and concluded that the state had acquiesced in the court's interpretation. Also during that hearing, counsel on behalf of the defendant requested that the respondent dismiss the indictment against the defendant on the charges which the

state had previously agreed to dismiss as part of the plea agreement. By order dated June 6, 1990, the respondent dismissed the charges contained in the indictment. The petitioner now seeks a writ of prohibition to prohibit the respondent from imposing a different sentence than that agreed upon in the plea agreement.

The sole issue we shall address in this appeal is whether the circuit court exceeded its authority in accepting the guilty plea and imposing a different sentence than that agreed upon by the petitioner and the defendant in the plea agreement. The petitioner contends that pursuant to *W.Va.R. Crim.P.* 11(e)(1)(C), the circuit court may accept or reject the entire plea agreement and sentence, but it may not accept the defendant's guilty plea and impose a different sentence. The defendant contends that, in describing the plea agreement, the assistant prosecuting attorney used words such as "proposal" and "suggest" with regard to the sentencing provision, and that the assistant prosecuting attorney did not object when the respondent characterized the proposal as a binding plea agreement with a sentencing recommendation pursuant to *W.Va.R.Crim.P.* 11(e)(1)(B).

The standards and procedures governing plea agreements are set forth in Rule 11 of the *West Virginia Rules of Criminal Procedure*, which provides, in relevant part:

(e) *Plea Agreement Procedure.*

(1) In General.—The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty, or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the state will do any of the following:

(A) Move for dismissal of other charges; or

(B) Make a recommendation or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) Agree that a specific sentence is the appropriate disposition of the case; or

(D) Agree not to seek additional indictments or information for other known offenses arising out of past transactions.

For purposes of this appeal, we are primarily concerned with the types of plea agreements entered into pursuant to Rules 11(e)(1)(B) and 11(e)(1)(C), commonly referred to in federal cases as "Type B" and "Type C," respectively.[1] *United States v. Jackson,* 563 F.2d 1145, 1147 n. 4 (4th Cir.1977); 1 C. Wright, *Federal Practice and Procedure* § 175.1, at 641 (2d ed. 1982). The distinction between a "Type B" agreement and a "Type C" agreement has been clearly drawn. A "Type B" agreement, under Rule 11(e)(1)(B), is an agreement by the prosecutor to make a sentencing recommendation with the understanding that such recommendation shall not bind the circuit court. *State v. Cabell,* 176 W.Va. 272, 274, 342 S.E.2d 240, 242 (1986). *See also United States v. Burruezo,* 704 F.2d 33 (2d Cir.1983); *United States v. French,* 719 F.2d 387 (11th Cir. 1983), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984). *See also* 1 C. Wright, *Federal Practice and Procedure* § 175.1, at 648–50 (2d ed. 1982); T. Hutchison & D. Yellen, *Federal Sentencing Law and Practice* 409–10 (1989); J. Bond, *Plea Bargaining and Guilty Pleas* § 1.7(e) (2d ed. 1983). Under a "Type C" agreement, Rule 11(e)(1)(C), the state and the defendant agree that a specific sentence is appropriate, and if the agreement is accepted by the court, it is bound to impose the agreed sentence. *United States v. Jackson,* 563 F.2d at 1147 n. 4; *United States v. Kemper,* 908 F.2d 33, 35–36 (6th Cir. 1990); *see also* 1 C. Wright, *Federal Prac-*

*tice and Procedure* § 175.1, at 645–46 (2d ed. 1982).[2]

The Ninth Circuit has recognized that where the government has agreed that a specific sentence is the appropriate disposition of the case and it enters into a "Type C" agreement with the defendant, the trial court may accept or reject the whole agreement, but it may not accept the guilty plea and impose a sentence greater than that agreed upon. *United States v. Herrera,* 640 F.2d 958, 960 n. 2 (9th Cir.1981). Furthermore, the Ninth Circuit has also held that Rule 11(e)(3)[3] of the *Federal Rules of Criminal Procedure* prohibits a district court from sentencing a defendant to a sentence less severe than that provided for in a "Type C" agreement which has been accepted by the court. *United States v. Semler,* 883 F.2d 832 (9th Cir.1989).

In *Semler,* 883 F.2d at 833–34, the Ninth Circuit traced the legislative history of *Fed.R.Crim.P.* 11(e)(3) as it applies to "Type C" agreements to determine Congress' intent:

Rule 11(e)(3) prohibits a district court from sentencing a defendant to a sentence less severe than that provided for in the plea agreement accepted by the court. It is true that the Advisory Committee's Notes state that '[s]ubdivision (e)(3) makes it mandatory, if the court decides to accept the plea agreement, that it inform the defendant that it will embody in the judgment and sentence the disposition provided in the plea agreement, *or one more favorable to the defendant,*' Notes of the Advisory Committee on the 1974 Amendment to Rule 11 (emphasis added). The actual text of 11(e)(3), however, states only that the district court must inform the defendant

1. Our Rules 11(e)(1)(B) and 11(e)(1)(C) are modeled after the *Federal Rules of Criminal Procedure. See State v. Guthrie,* 173 W.Va. 290, 298, 315 S.E.2d 397, 405 (1984).

2. We note that under the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984, codified at 28 *U.S.C.* §§ 991–998 (1988), the parties to the plea agreement can, under *Fed.R.Crim.P.* 11(e)(1)(C), agree that a specific guideline range is appropriate or agree to a specific sentence within the guideline

range. *See* Purdy & Goldsmith, *Better Do Your Homework: Plea Bargaining Under the New Federal Sentencing Guidelines,* 3 Crim.Just. 2, 34 (1988).

3. *W.Va.R.Crim.P.* 11(e)(3), which is identical to the federal rule, provides that "[i]f the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement."

that it will embody in the sentence the disposition provided in the plea agreement.

The legislative history of 11(e)(3) shows that Congress wished to preclude a district court from accepting a plea agreement which provides for a specific sentence and then imposing a more lenient sentence than that provided for in the plea agreement. The version of 11(e)(3) proposed by the Supreme Court in 1974 stated that 'the court shall inform the defendant that it will embody in the ... sentence the disposition provided for in the plea agreement or another disposition more favorable to the defendant than that provided for in the plea agreement.' The House Judiciary Committee then deleted the language 'or another disposition more favorable to the defendant than that provided for in the plea agreement,' and the House affirmed the committee's action by rejecting on the floor an amendment offered to restore the Supreme Court's version of the rule. The Senate accepted the House's version of the rule. *See* 121 Cong.Rec. 23322 (July 17, 1975) (discussion of legislative history of the rule).

By deleting the Supreme Court's 'more favorable to the defendant' language, Congress evidenced its intent to require a district court to sentence a defendant in accordance with the plea agreement.[4]

Thus, based on our review of the federal courts' analysis of Rule 11 plea agreements, we hold that where the state agrees to make a sentencing recommendation and enters into a plea agreement with the defendant pursuant to Rule 11(e)(1)(B) of the *West Virginia Rules of Criminal Procedure*, the trial court is not bound to impose the sentence recommended by the state if it accepts the plea agreement. We further hold that where the state agrees that a specific sentence is a suitable disposition of a criminal case and enters into a plea agreement with the defendant pursuant to Rule 11(e)(1)(C) of the *West Virginia Rules of Criminal Procedure*, the trial court may either accept or reject the entire agreement, but it may not accept the guilty plea and impose a different sentence than that agreed upon.

It is not clear in the case before us, however, whether the plea agreement was a "Type B" or a "Type C." At the hearing on January 18, 1990, the respondent inquired as to whether the defendant understood that the respondent was not bound to sentence the defendant in accordance with the plea agreement. At that point of inquiry, the assistant prosecuting attorney advised the court that, under the agreement, the defendant would have the right to withdraw any guilty plea he entered pursuant to that agreement if the court did not accept the proposal regarding sentencing.[5] When the issue of sentencing was raised again later in the hearing, the assistant prosecuting attorney characterized the sentencing provision as a "proposal."[6]

---

**4.** We note that the Ninth Circuit in *Semler* also concluded that "a district court has the authority under the old version of Rule 35(b) ... to reduce a sentence entered pursuant to a Rule 11(e)(1)(C) agreement in exceptional cases." *Id.* at 835.

Although *Fed.R.Crim.P.* 35(b) has been changed, we have not adopted those changes and our Rule 35(b) is still modeled after the old version of the federal rule.

**5.** The assistant prosecuting attorney stated:

Your Honor, let me point out that the way this agreement is structured, if the court does not accept the *proposal* made about a sentencing in that agreement, then Mr. Williams would have a right to withdraw any guilty plea that he entered pursuant to that agreement. So while it's true the Court is not bound to give that sentence, it does provide

that Mr. Williams is not waiving all of his rights should the court not agree with that sentence. He then could withdraw his guilty pleas, and we'd be back to the same position that we were in at the beginning of the day. (emphasis added)

**6.** The assistant prosecuting attorney explained the sentencing provision as follows:

Now our *proposal* is that on the first count he be given a sentence of one to fifteen; and, of course, against that sentence, he would receive credit for the jail time. We don't know the exact number of days. The probation department will calculate that for us, but we *suggest* that Mr. Williams should be given credit for the jail time.

The second felony carries a sentence of one to fifteen, and we *propose* that that sentence be served consecutively. And the third felony

Moreover, the written plea agreement proffered by the state does not specify whether the sentence provision has been agreed upon pursuant to *W.Va.R.Crim.P.* 11(e)(1)(B) or 11(e)(1)(C). The letter to the defendant offering the plea agreement, however, did characterize it as a "binding" plea agreement, allowing the agreement to be voided if the defendant was not sentenced in accordance with its provisions. Yet, the four separate guilty pleas signed by the defendant on January 18, 1990, specifically provide that "any plea bargaining which appears in the record of this case is not binding upon the court with respect to punishment or probation," and that, should the defendant plead guilty, he "could" be sentenced to the terms of imprisonment set forth in the guilty pleas. Moreover, the assistant prosecuting attorney never told the trial judge at the hearing on the plea agreement that the agreement was entered into under Rule 11(e)(1)(C).

The Fourth Circuit, in *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986), recognized that "both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant ... for imprecisions or ambiguities in plea agreements."[7] The Fourth Circuit further stated that "[t]his is particularly appropriate where, as will usually be the case, the Government has proffered the terms or prepared a written agreement—for the same reasons that dictate that approach in interpreting private contracts." *Id.* at 301.[8]

■ We agree with the Fourth Circuit's observation that the state must insure that the terms of a plea agreement are clear and exact. The defendant waives significant constitutional rights by entering into a plea agreement, such as the right to examine and confront witnesses who would testify against the defendant, the privilege against compulsory self-incrimination, the presumption of innocence, and the right to a speedy trial. *State v. Whitt*, 183 W.Va. 286, 289–290, 395 S.E.2d 530, 533–34 (1990); 21 Am.Jur.2d *Criminal Law* § 473, at 763 (1981). Although we recognize that the state surrenders certain prosecutorial prerogatives when it enters into a plea agreement, we believe that a defendant's waiver of his or her constitutional rights outweighs the state's foregoing of its right to prosecute.

■ Thus, the state bears the primary responsibility for insuring precision and unambiguity in a plea agreement because of the significant constitutional rights the defendant waives by entering a guilty plea. If a plea agreement is imprecise or ambiguous, such imprecision or ambiguity will be construed in favor of the defendant.

■ If a plea is taken pursuant to a plea agreement and the state has agreed to a specific sentence in that agreement, yet if it is not clear whether the plea was taken under Rule 11(e)(1)(B) or 11(e)(1)(C) of the *West Virginia Rules of Criminal Procedure*, the trial judge may sentence the defendant without being bound by the sentencing provision in the plea agreement.

We do not believe that the state in the case before us satisfied its responsibility to present the trial court with a plea agreement containing clear and precise terms. The plea agreement did not specifically state whether it was a "Type B" or "Type C" agreement. The terms of the guilty pleas signed by the defendant contradicted

---

carries a sentence of one to fifteen, and we *propose* that that sentence be served consecutively. There are three consecutively; so that is a sentence of—a minimum sentence of three years minus, of course, the credit for jail time[.]

We *propose* that the fourth felony carried a sentence of one to fifteen years, but that the fourth sentence be served concurrently with the others. So that leaves us with a minimum sentence of three years minus the jail time and, of course, a maximum sentence, theoretically, of forty-five years.

(emphasis added)

**7.** The issue in *Harvey* was whether the terms of a plea agreement he entered into with the government barred his prosecution in another district in a related case. 791 F.2d at 295.

**8.** The Fourth Circuit also observed that "derelictions on the part of defense counsel that contribute to ambiguities and imprecisions in plea agreements may not be allowed to relieve the government of its primary responsibility for insuring precision in the agreement." *Id.*

the terms of the plea agreement proffered by the state with respect to sentencing. Moreover, when the plea agreement was presented to the trial court, the assistant prosecuting attorney characterized it as a "proposal." The state could have avoided any misinterpretation of the plea agreement by specifically citing the particular rule pursuant to which the agreement was entered, advising the trial court of that rule, and insuring that the guilty pleas signed by the defendant were consistent with the agreement. Since the plea agreement was imprecise and the manner in which the agreement was presented to the trial court led the respondent to believe it was a "Type B" agreement, we find that the respondent was not bound to impose the sentence contained in the agreement.

Based upon the record before us, we cannot conclude that the respondent exceeded his authority by treating the plea agreement as a "Type B" agreement. Thus, for the reasons set forth herein, we conclude that the writ of prohibition shall be denied.

Writ denied.