IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

_____

No. 13-0779

_____

FILED

**November 6, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiffs Below, Respondent

v.

CINDY V. ALLMAN,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Harrison County
The Honorable James A. Matish, Judge
Criminal Action No. 10-F-79-3

AFFIRMED

_____

Submitted: October 1, 2014
Filed: November 6, 2014

Jonathan Fittro, Esq.                     Patrick Morrisey, Esq.
Clarksburg, West Virginia                 Attorney General
Counsel for the Petitioner                Laura Young, Esq.
                                          Assistant Attorney General
                                          Shannon F. Kiser
                                          Assistant Attorney General
                                          Charleston, West Virginia
                                          Counsel for the Respondent

JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

"'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1, in part, *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. pt. 1, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011).

Benjamin, Justice:

This case comes before us pursuant to the appeal by Cindy V. Allman of the July 1, 2013 order of the Circuit Court of Harrison County, wherein Ms. Allman was sentenced to life imprisonment without the possibility of parole. Ms. Allman asserts that, in return for her guilty plea to a single count of felony murder, the prosecutor agreed to recommend to the circuit court that she be granted eligibility for eventual parole from the required life sentence. Although the prosecutor complied with the agreement, the court declined to accept the State's recommendation. On appeal, Ms. Allman contends that the circuit court did not adequately justify its decision to depart from the plea agreement and recommendation. This Court has before it all materials of record, the parties' respective briefs, and the argument of counsel. Based upon our review of this matter and for the reasons set forth herein, we affirm the circuit court's sentencing order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

At about 4:30 a.m. on October 25, 2009, Ms. Allman, having used heroin and cocaine earlier in the evening, stood with Jeffery Taylor just outside the home of Terry K. Lewis, while Alexander Bosley waited in a nearby vehicle. The group was in search of money and valuables. Ms. Allman and Mr. Taylor entered the Lewis residence through the unlocked front door, then armed themselves with knives they found in the kitchen. Shortly thereafter, Mr. Taylor confronted Mr. Lewis in the bedroom, where Mr.

1

Lewis had been sleeping along with his eight-year-old grandson. Mr. Taylor stabbed Mr. Lewis, who stumbled into the hallway screaming and looking for help. There Mr. Lewis encountered Ms. Allman, from whom he received additional stab wounds. The wounds Mr. Lewis sustained from each attack proved to be independently fatal.

About three weeks afterward, on November 15, 2009, the police received a telephone call from Mr. Taylor's estranged girlfriend. The woman disclosed what she knew concerning the killing, which led to the arrests of Ms. Allman, Mr. Taylor, and Mr. Bosley. The grand jury returned an indictment on May 4, 2010, charging each of the three arrestees with felony murder and with conspiracy to commit burglary. The trio entered into separate agreements with the State to plead guilty to the murder charge, in exchange for dismissal of the conspiracy charge and for the prosecutor recommending at sentencing that each be deemed eligible for parole after serving fifteen years of a life term. *See* W. Va. Code § 61-2-1 (1991) (explaining that murder "in the commission of, or attempt to commit . . . burglary . . . is murder of the first degree"); W. Va. Code § 62-3-15 (1994) (mandating sentence of life imprisonment for first-degree murder and instructing that if an accused pleads guilty to that charge, "the court may, in its discretion . . . provide that such person shall be eligible for parole . . . in the same manner and with like effect as if such person had been found guilty by the verdict of a jury and the jury had recommended mercy, except that . . . such person shall not be eligible for parole until he or she has served fifteen years").

2

The circuit court accepted the defendants' respective pleas after hearings conducted in accordance with Rule 11 of the West Virginia Rules of Criminal Procedure. *See infra* Part III. The probation officer prepared presentence investigation reports, and each of the three defendants came before the court for sentencing on October 28, 2010. At the conclusion of that hearing, the court rejected the State's recommendation for mercy and, by order of November 24, 2010, sentenced all three defendants to life without the possibility of parole. Ms. Allman moved for reconsideration, and she also filed a complaint against her lawyer with the Office of Disciplinary Counsel. The court held Ms. Allman's motion in abeyance pending resolution of the disciplinary complaint and pending appellate proceedings initiated by Mr. Taylor.[1]

On June 19, 2013, the circuit court conducted a second sentencing hearing pertaining solely to Ms. Allman. By order of July 1, 2013, the court reimposed the original sentence of life imprisonment without the possibility of parole. Ms. Allman appealed the sentencing order on August 1, 2013, and, though filed one day late, the appeal was permitted to proceed for good cause shown, in accordance with this Court's

---

[1] Mr. Taylor filed his own motion for reconsideration, but, on January 6, 2011, before obtaining a ruling, he petitioned this Court for appeal. On October 20, 2011, we entered an order dismissing the petition without prejudice to being refiled once the circuit court has disposed of the reconsideration motion.

3

order of August 5, 2013. *See* W. Va. R. App. P. 5(b) (directing that the notice of appeal be filed "[w]ithin thirty days of entry of the judgment being appealed," although the time period may be extended beyond the thirty-day window "for good cause shown").

## II.

## STANDARD OF REVIEW

Ms. Allman does not contend that she was sentenced unconstitutionally or in violation of any statute. We therefore review the sentencing order merely to ensure that the circuit court did not abuse its discretion by denying Ms. Allman the possibility of parole for the duration of her life imprisonment. *See* syl. pt. 1, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011) ("'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).").

## III.

## ANALYSIS

The plea agreement stipulated that it was governed by "Rule 11(e)(1)(B) of the West Virginia Rules of Criminal Procedure," and it further indicated that Ms. Allman had been made "fully aware that the Court is not bound by any recommendations made

4

by the State."[2]  Ms. Allman's "Type B" agreement—so labeled to correspond with the pertinent subparagraph of Rule 11(e)(1)—stands in contrast to "Type C" plea agreements negotiated pursuant to the succeeding subparagraph.  In a Type C arrangement, the parties reach a mutual agreement "that a specific sentence is the appropriate disposition of the case."  W. Va. R. Crim. P. 11(e)(1)(C).  We have previously explained that if a defendant has entered into a Type C plea agreement with the State, "the trial court may either accept or reject the entire agreement, but it may not accept the guilty plea and impose a different sentence than that agreed upon."  *State ex rel. Forbes v. Kaufman*, 185 W. Va. 72, 76, 404 S.E.2d 763, 767 (1991).

Ms. Allman acknowledges that her Type B plea agreement did not legally bind the circuit court.  She nonetheless suggests that a sentencing order should evidence the court's thorough contemplation of the Type B agreement and must give the State's recommendation more than mere lip service.  Otherwise, says Ms. Allman, the agreement has no value except to the extent that it happens to be predictive of the court's predisposition.  Before rejecting a prosecutorial recommendation that the defendant

---

[2] The referenced rule provides specifically that the State, in exchange for a defendant's guilty plea, may "[m]ake a recommendation or agree not to oppose the defendant's request[] for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court."  W. Va. R. Crim. P. 11(e)(1)(B).

eventually be considered for parole, Ms. Allman posits, a circuit court must make a specific finding that the plea agreement fails to serve the interests of justice.

At the initial sentencing hearing, the circuit court made clear that it "is always mindful of plea agreements," and it recited that the agreement in Ms. Allman's case "calls for the State to recommend that [she] be eligible for parole after having served fifteen years." In the corresponding order, the court explained that it "did consider the mitigating factors of the defendant's age, lack of parental supervision or help, and history of substance abuse, physical abuse, [and] sexual abuse." The court nonetheless declined to recommend that Ms. Allman be eligible for parole "based upon her representations in the presentence investigation report, [her] lack of work history yet ability . . . to go from one fix to the next, and the burglary of a home in the nighttime resulting in the stabbing death of the homeowner in front of his minor grandchild."[3] Emphasizing this last factor in particular, the court remarked that the boy's presence during the attack on his grandfather "would cry out for a jury . . . not to grant any mercy."

---

[3] The circuit court elaborated from the bench that Ms. Allman's statements to her probation officer attempted "to mitigate [her] role[] in the events of that night and . . . put the blame on the other individuals." Ms. Allman's excuses, the court reasoned, rendered it "very questionable" that she had accepted responsibility for her actions.

6

The circuit court's statements leave no room to surmise that it misunderstood what the plea agreement provided. The court manifestly was aware that the State had recommended parole eligibility, and it undoubtedly realized that it could accept that recommendation. Moreover, Ms. Allman does not contend that she entered into the plea agreement involuntarily, or without being advised competently, or that she failed to comprehend the extent of the court's discretion.[4]

A circuit court speaks through its written orders, which, "as a rule, must contain the requisite findings of fact and conclusions of law "'to permit meaningful appellate review.'" *State v. Redman*, 213 W. Va. 175, 178, 578 S.E.2d 369, 372 (2003) (quoting syl. pt. 3, in part, *Fayette Cnty. Nat'l Bank v. Lilly*, 199 W. Va. 349, 484 S.E.2d 232 (1997)). Here, the circuit court spoke plainly. Though perhaps not invoking the precise words that Ms. Allman may have preferred, the sentencing order unquestionably reflects that the court carefully weighed the interests of justice in this particular instance against the general systemic interest in permitting the parties to a negotiated plea agreement to realize their expectations regarding its effect. From all indications, the

---

[4] The law is familiar with those types of sentencing defects, and methodologies have been established to correct such errors when they occur. *See, e.g.*, *State v. Yoak*, 202 W. Va. 331, 335, 504 S.E.2d 158, 162 (1998) (remanding for reconsideration of sentence based on circuit court's erroneous conclusion that it lacked authority to direct home confinement); *State ex rel. Clancy v. Coiner*, 154 W. Va. 857, 865, 179 S.E.2d 726, 731 (1971) (granting collateral relief and vacating petitioners' convictions and sentences on ground that guilty pleas were falsely induced and therefore involuntary).

court's rejection of the State's recommendation was an appropriate exercise of its legitimate discretion, with no evidence of predisposition.

The Type B plea agreement in this case allocated to Ms. Allman the risk that she and her counsel would overestimate the circuit court's inclination to be persuaded by the prosecution's recommendation. That is how agreements are supposed to work. Had Ms. Allman been in a stronger bargaining position (that is, had the conduct surrounding her offense not "cried out" for a jury to withhold mercy), she might have been able to negotiate a Type C plea arrangement that the court would have been constrained to either take or leave.

In *Williams v. New York*, 337 U.S. 241 (1949), the Supreme Court of the United States reviewed a death sentence imposed on the defendant for a murder committed during a burglary. The trial court, relying on information contained in the presentencing report, rejected the jury's recommendation that the defendant be sentenced to life in prison. Justice Black, writing for the Court, rebuffed the defendant's assertion of a due process violation, reminding us that "there is possibility of abuse wherever a judge must choose between life imprisonment and death." *Id.* at 251. The Court observed further "that no federal constitutional objection would have been possible if the judge here had sentenced appellant to death because appellant's trial manner impressed the judge that appellant was a bad risk for society, or if the judge had sentenced him to

8

death giving no reason at all." *Id.* at 252. Justice Black characterized the discretion afforded the trial court as an "awesome power," *id.*, vividly illustrating the vast extent to which society relies on sentencing judges to wield that discretion with solemnity and due deliberation. Ms. Allman's circumstances are materially indistinguishable from those confronted by the Supreme Court sixty-five years ago in *Williams*. We can discern no abuse of the circuit court's discretion herein.

## IV.

## CONCLUSION

Pursuant to the foregoing, we affirm the circuit court's order sentencing Ms. Allman to life imprisonment without parole.

Affirmed.

9