**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Terrick Hogan,**
**Petitioner Below, Petitioner**

**vs.)   No. 20-0125** (Kanawha County 19-P-450)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**


**MEMORANDUM DECISION**


Self-represented petitioner Terrick Hogan appeals the January 28, 2020, order of the Circuit Court of Kanawha County dismissing without prejudice his second petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Elizabeth Grant, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2015, petitioner conspired with Shayla Stephenson and Marcus Curtis to rob a fourth person, Kalvon Casdorph ("the victim"). According to the State, petitioner planned the robbery, Ms. Stephenson provided the gun, and Mr. Curtis carried out the plan. During the robbery, Mr. Curtis shot and killed the victim. The three participants were each indicted on one count of conspiracy, one count of first-degree robbery, and one count of first-degree murder in the Circuit Court of Kanawha County.

On August 15, 2016, the circuit court held a hearing on petitioner's motion to suppress two incriminating statements he gave to the police; the court denied the motion. That same day,

1

petitioner entered into a plea agreement with the State. In that agreement, the State agreed to dismiss the conspiracy and robbery counts of the indictment in exchange for petitioner's guilty plea to first-degree murder. The parties agreed the appropriate disposition of petitioner's case was a life term of incarceration with the possibility of parole; therefore, pursuant to Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure, the circuit court would be required to impose that sentence if it accepted the plea agreement. In addition, petitioner agreed to provide truthful testimony against his co-conspirators, if necessary. The State agreed not to file a recidivist information against petitioner.[1] Finally, the parties agreed that petitioner would provide the factual basis for his guilty plea.

The circuit court held a plea hearing on August 16, 2016, during which the court noted that petitioner previously rejected the same proposed plea agreement and explained that petitioner was going to enter a guilty plea "a couple months or so ago" but "canceled" a prior plea hearing "after [a] while." Consequently, the court asked petitioner, "[a]re you sure you now want to do this?" Petitioner answered, "[y]es." The circuit court also inquired of the State regarding the nature of the plea agreement it had with petitioner's co-conspirator, Mr. Curtis. The assistant prosecutor answered, "[i]t is the exact same plea agreement." The court then asked petitioner if he requested that the court accept the plea agreement and impose a life sentence of incarceration with the possibility of parole. Petitioner responded, "[y]es, sir." The court inquired whether petitioner believed the plea agreement was in his best interests, and petitioner answered in the affirmative.

Next, the circuit court explained to petitioner the rights he would be giving up by pleading guilty such as the right to a jury trial, the right to testify in his own defense or to choose to remain silent, and the right to present witnesses. The court noted that petitioner exercised his right to seek the suppression of certain evidence at the previous day's hearing, but that his motion was denied. The court explained to petitioner that, by pleading guilty, he would waive the right to challenge such evidentiary rulings on appeal. The court asked if petitioner understood this. Petitioner responded, "[y]es, I do." The court inquired of the State as to whether discovery was provided to the defense. The assistant prosecutor answered affirmatively and noted that "[w]e've actually been to the state police headquarters to review the evidence and to look at all of it, even all of the stuff that was collected that day." The circuit court asked petitioner's counsel to confirm that he reviewed the evidence at the state police headquarters. Petitioner's counsel responded, "[t]hat is correct, Your Honor." Petitioner's counsel further confirmed that he was fully aware of the evidence the State would present at a trial. The court asked petitioner to confirm that he understood he had the right to move to "eliminate" any illegally obtained evidence, and petitioner indicated that he understood he had and was waiving that right by pleading guilty.

Prior to accepting petitioner's guilty plea, the circuit court asked petitioner if he had any additional questions for his attorney, at which time petitioner and his counsel conferred off the

---

[1]As reflected in the August 16, 2016, plea and sentencing transcript, the State believed that petitioner had at least one prior felony, based on which it could have sought a sentence enhancement pursuant to the West Virginia habitual offender statute, West Virginia Code §§ 61-11-18 and 61-11-19.

record. Thereafter, petitioner indicated that he wanted to proceed with his guilty plea. The court then asked petitioner whether he was satisfied with his counsel's services, and petitioner responded in the affirmative. The circuit court noted that petitioner's counsel had "a lot of experience in criminal cases." When petitioner was asked if he "had plenty of opportunity to talk with [counsel] and let him advise [petitioner] about [his] case," petitioner answered, "[y]es, I have."

The circuit court again inquired whether petitioner was willing to waive his rights and enter a guilty plea to first-degree murder. Petitioner responded, "[y]es, sir." The court then asked petitioner to indicate his plea to the charge of first-degree murder. Before answering, petitioner conferred again with his counsel. Thereafter, petitioner responded, "[g]uilty." The circuit court asked for the factual basis for the guilty plea. After a third consultation with his attorney, petitioner answered:

> [Petitioner]: On the day in question, I conspired to a commit a robbery, in which . . . . . the victim—
>
> The Court: Mr. Casdorph?
>
> [Petitioner]: —Mr. Casdorph, was killed. And[,] I never intended for anything to this magnitude to occur. But—
>
> The Court: You just intended the robbery to take place?
>
> [Petitioner]: Yes, Sir.
>
> . . . .
>
> [Assistant Prosecutor]: Judge, it would be the State's evidence that the robbery . . . was 100% orchestrated by [petitioner]. He solicited Mr. Curtis to do the robbery via text message that day. As the architect of that plan, he is as guilty as Mr. Curtis of [the] murder. Also, [petitioner] directed Mr. Curtis to where the firearm was and instructed [Ms.] Stephenson to give it to him. Those things would all be in evidence if we went to trial. There would be several text messages in which [petitioner] does those things.
>
> . . . .
>
> The Court: [Petitioner], do you agree with that?
>
> [Petitioner]: Yes, sir.

The circuit court informed petitioner that it was prepared to accept his guilty plea and asked one more time whether petitioner wanted to change his mind. Petitioner responded, "[n]o, sir." Accordingly, the court accepted petitioner's guilty plea and found that petitioner "voluntarily,

3

intelligently, knowingly[,] and understandingly waive[d]" his constitutional rights. The circuit court, thereafter, found petitioner guilty of first-degree murder.

The circuit court inquired as to whether petitioner's sentencing should be delayed until after Mr. Curtis's sentencing set for the afternoon of petitioner's plea and sentencing hearing. The court explained that such a delay might be prudent in the event that "something happens in the Curtis case . . . regarding that plea," as it was more difficult to withdraw a guilty plea after sentencing occurred. Therefore, the circuit court delayed petitioner's sentencing until after Mr. Curtis's sentencing.[2] Mr. Curtis's sentencing occurred as planned, and the circuit court sentenced Mr. Curtis to a life term of incarceration with the possibility of parole. Later that afternoon, the circuit court reconvened petitioner's sentencing hearing. After another discussion with his counsel, petitioner waived the preparation of a presentence investigation report. Thereafter, in accordance with the parties' plea agreement, petitioner was also sentenced to a life term of incarceration with the possibility of parole.

On March 17, 2017, and April 10, 2017, as a self-represented litigant, petitioner filed motions to vacate his guilty plea, alleging ineffective assistance of counsel. The circuit court denied those motions by order entered on April 25, 2017. Petitioner attempted to appeal the circuit court's April 25, 2017, order to this Court. However, this Court refused to docket the appeal by order entered on July 5, 2017, due to noncompliance with court rules.[3]

As a self-represented litigant, petitioner filed a petition for a writ of habeas corpus in the circuit court on May 1, 2018, alleging ineffective assistance of counsel and an involuntary guilty plea. By order entered on May 9, 2018, the circuit court denied the petition, finding that "a hearing is not necessary in order for the [c]ourt to make a decision in this matter and . . . that good cause or other justification does not exist to grant said request." Petitioner appealed the denial of his habeas petition in *Hogan v. Ames*, No. 18-0493, 2019 WL 4165286 (W. Va. September 3, 2019) (memorandum decision), in which this Court affirmed the denial of the habeas petition.[4] This Court, in *Hogan*, found that "the August 16, 2016, plea and sentencing transcript wholly refutes petitioner's allegations of ineffective assistance of counsel" and petitioner's claim that his guilty plea was involuntary was "unsupported in fact and in direct contradiction to the explicit statements made by petitioner during his plea colloquy." *Id.* at *4 and *6.

With the assistance of counsel, petitioner filed a second habeas petition in the circuit court on November 13, 2019, alleging (1) ineffective assistance of counsel; (2) involuntary guilty plea;

---

[2]Earlier, at the August 16, 2016, plea and sentencing hearing, the assistant prosecutor noted that, when Mr. Curtis believed that he might have to testify against petitioner, Mr. Curtis previously "got cold feet" about pleading guilty in his case.

[3]We take judicial notice of the record in Supreme Court No. 17-0524.

[4]We take judicial notice of the record in *Hogan v. Ames*, No. 18-0493, 2019 WL 4165286 (W. Va. September 3, 2019) (memorandum decision).

(3) coerced confession; (4) irregularities in petitioner's arrest; (5) illegal detention prior to arraignment; (6) unconstitutional denial of pretrial bail; and (7) defective indictment. By order entered on January 28, 2020, the circuit court found that the second habeas petition could be dismissed pursuant to Rule 4(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia ("Habeas Rule 4(c)"), which provides, in pertinent part: "If the petition contains a mere recitation of grounds without adequate factual support, the court may enter an order dismissing the petition, without prejudice, with directions that the petition be refiled containing adequate factual support. The court shall cause the petitioner to be notified of any summary dismissal." Accordingly, the circuit court dismissed the second habeas petition without prejudice and, in compliance with Habeas Rule 4(c), directed the circuit clerk to "serve a copy of this order upon . . . petitioner."

Petitioner, as a self-represented litigant, now appeals the circuit court's January 28, 2020, order dismissing his second habeas petition. We review a circuit court order dismissing a habeas petition under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016).

On appeal, petitioner argues that the case should be remanded to the circuit court with directions to make sufficient findings of fact and conclusions of law pursuant to Syllabus Point 1 of *State ex rel. Watson v. Hill*, 200 W. Va. 201, 488 S.E.2d 476 (1997), in which we held that "West Virginia Code section 53-4A-7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined."[5] We disagree. In *Watson*, we found that our review of the circuit court order in that

---

[5]West Virginia Code § 53-4A-7(c) provides in pertinent part:

When the court [in a post-conviction habeas corpus proceeding] determines to deny or grant relief . . ., the court shall enter an appropriate order . . . . In any order entered in accordance with the provisions of this section, the court shall make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced, shall clearly state the grounds upon which the matter was determined, and shall state whether a federal and/or state right was presented and decided.

Rule 9(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia (continued . . .)

case was "hindered by the circuit court's failure to articulate its reasons for [the] denial [of the habeas petition]." *Id.* at 203, 488 S.E.2d at 478. In contrast, the circuit court in this case relied on Habeas Rule 4(c) in dismissing the second habeas petition without prejudice as setting forth grounds for relief "without adequate factual support" and complied with Habeas Rule 4(c)'s directive to notify petitioner that his petition could be refiled, provided that adequate factual support was set forth therein. Given the circuit court's compliance with Habeas Rule 4(c), we find that its order sufficiently articulated its reasons for dismissing the second habeas petition.

Petitioner further argues that the circuit court should have held a hearing on his habeas claims. Respondent counters that the circuit court properly dismissed the second habeas petition. We agree with respondent, as we have held that

> "'[a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing . . . if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.' Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973)." Syl. Pt. 2, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18 (2004).

Syl. Pts. 3, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016).

With regard to petitioner's first two claims, we found in *Hogan* that "the August 16, 2016, plea and sentencing transcript wholly refutes petitioner's allegations of ineffective assistance of counsel" and petitioner's claim that his guilty plea was involuntary was "unsupported in fact and in direct contradiction to the explicit statements made by petitioner during his plea colloquy." 2019 WL 4165286, at *4 and *6. As we held in Syllabus Point 2 of *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975), "[a] criminal defendant can knowingly and intelligently waive his constitutional rights, and when such knowing and intelligent waiver is conclusively demonstrated on the record, the matter is *res judicata* in subsequent actions in *habeas corpus*." *See State ex rel. Forbes v. Kaufman*, 185 W.Va. 72, 77, 404 S.E.2d 763, 768 (1991) (finding that a defendant "waives significant constitutional rights by entering into a plea agreement"); *State v. Greene*, 196 W. Va. 500, 505, 473 S.E.2d 921, 926 (1996) (Cleckley, J., concurring) (stating that, "in the absence of special circumstances, a guilty plea waives all antecedent constitutional and statutory violations save those with jurisdictional consequences"). For example, with regard to the denial of petitioner's motion to suppress the two incriminating statements he gave to the police, as part of the plea colloquy, petitioner acknowledged that he was waiving the right to challenge such evidentiary rulings on appeal by pleading guilty. Therefore, based upon our review of the record, we find that petitioner's guilty plea waived all claims set forth in the second habeas petition except for the claim that the indictment against him was defective.

With regard to the remaining claim, we have held that:

---

imposes a similar requirement for findings of fact and conclusions of law.

Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure requires that a defendant must raise any objection to an indictment prior to trial. Although a challenge to a defective indictment is never waived, this Court literally will construe an indictment in favor of validity where a defendant fails timely to challenge its sufficiency. Without [an] objection, the indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense under West Virginia law or for which the defendant was convicted.

Syl. Pt. 1, *State v. Miller*, 197 W. Va. 588, 476 S.E.2d 535 (1996). Here, petitioner presented the circuit court with contradictory statements regarding the validity of the indictment. Petitioner filed a *Losh* checklist with his second habeas petition, in which he waived the claim that the "[i]indictment show[s] on its face that no offense was committed."[6] Accordingly, while petitioner alleged in the second habeas petition that the indictment had certain defects, we find that he waived any argument that those defects caused a failure of the indictment to charge petitioner with an offense. In *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981), we stated that the assertion of a habeas claim without adequate factual support "does not justify . . . the holding of a hearing." *Id.* at 771, 277 S.E.2d at 612. Therefore, based upon our review of the record, we conclude that the circuit court did not err in dismissing petitioner's second habeas pursuant to Habeas Rule 4(c).

For the foregoing reasons, we affirm the circuit court's January 28, 2020, order dismissing without prejudice petitioner's second petition for a writ of habeas corpus.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[6]The checklist of grounds typically used in habeas corpus proceedings, usually referred to as the *Losh* checklist, originates from our decision in *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981), where we set forth the most common grounds for habeas relief. *Id.* at 768-70, 277 S.E.2d at 611-12. An "indictment show[ing] on [its] face [that] no offense was committed" and "defects in [the] indictment" are both grounds for relief listed on the *Losh* checklist. *Id.* at 769, 277 S.E.2d at 611.