Norman Glenn **ELMORE**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 2006–CA–001455–MR.

Court of Appeals of Kentucky.

Sept. 21, 2007.

James A. Earhart, Louisville, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Clint E. Watson, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, Chief Judge; ACREE and TAYLOR, Judges.

## OPINION

COMBS, Chief Judge.

Norman Glenn Elmore appeals from a judgment and order of probation of the Shelby Circuit Court that sentenced him to a five-year probated sentence and ordered him to be "confined to home under Adult Supervision 24 hours a day—7 days [a] week." After our review, we vacate and remand for further proceedings.

On August 25, 2003, the Shelby County Grand Jury indicted Elmore on one count of first-degree sexual abuse pursuant to Kentucky Revised Statutes (KRS) 510.110 for subjecting a minor to sexual contact through the use of forcible compulsion. Elmore appeared in open court with counsel on September 29, 2003, and entered a plea of not guilty to the charge.

On June 10, 2004, the Commonwealth made a plea offer to Elmore in which the Commonwealth agreed to recommend that he serve a sentence of five-years' imprisonment in exchange for a plea of guilty to the sexual abuse charge. The offer also provided that the Commonwealth would recommend that the sentence run concurrently with a ten-year sentence entered against him in the Jefferson Circuit Court on related charges and that "[i]f probated by Jefferson County the sentence in Shelby County would **likewise** be probated." (Emphasis added.) Elmore accepted the Commonwealth's offer and filed a motion to enter a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), on the same day. A hearing on the motion was also held on the same day before Judge William Stewart. Judge Stewart accepted Elmore's plea; however, final sentencing was deferred until the Jefferson County action had concluded.

The action against Elmore in the Jefferson Circuit Court was later resolved, Senior Judge Rebecca Overstreet now sitting by designation, and Elmore received a ten-year probated sentence. On June 27, 2006, the Shelby Circuit Court followed suit and entered a judgment that gave Elmore a probated sentence of five-years' imprisonment. However, Judge Overstreet ordered imposition of an additional term as part of her order of probation: that Elmore be "confined to home under Adult Supervision 24 hours a day—7 days [a] week." This provision was not part of the order of probation entered by the Jefferson Circuit Court in its case involving Elmore.

■ In appealing this portion of the order of the Shelby Circuit Court, Elmore claims that the home-confinement provision of the order of probation was not part of the parties' plea agreement. Consequently, he contends that he should have been given the opportunity to withdraw his guilty plea pursuant to Kentucky Rules of Criminal Procedure (RCr) 8.10. According to Elmore, his agreement with the Commonwealth was that the trial court—upon accepting his guilty plea and the plea agreement—would adopt and enter the **identical terms** of the order of probation to be entered in the Jefferson Circuit

Court. The Commonwealth contends that this issue is not properly before us because Elmore failed to present it first to the trial court. The Commonwealth also argues that Elmore's appeal should be dismissed outright because he waived his right to an appeal when he knowingly and voluntarily entered into a guilty plea.

As a general rule, a voluntary guilty plea waives all defenses other than that the indictment charges no offense. *Toppass v. Commonwealth,* 80 S.W.3d 795, 798 (Ky.App.2002); *Centers v. Commonwealth,* 799 S.W.2d 51, 55 (Ky.App.1990). Thus, there generally is no right to a direct appeal from a plea of guilty. *Greer v. Commonwealth,* 713 S.W.2d 256, 257 (Ky.App.1986). However, a defendant may by direct appeal challenge the legality of a sentence imposed pursuant to a guilty plea because sentencing issues are considered "jurisdictional" and cannot be waived. *See Gaither v. Commonwealth,* 963 S.W.2d 621, 622 (Ky.1997); *Hughes v. Commonwealth,* 875 S.W.2d 99, 100 (Ky.1994); *Ware v. Commonwealth,* 34 S.W.3d 383, 385 (Ky.App.2000); *Sanders v. Commonwealth,* 663 S.W.2d 216, 218 (Ky.App.1983). Therefore, despite the fact that Elmore did not raise this issue before the trial court, it is a legitimate subject for our review.

The Commonwealth disputes Elmore's claim that the plea agreement called for the trial court to adopt and to enter the exact conditions of the Jefferson Circuit Court's order of probation. According to the Commonwealth, the court was only obligated by the plea agreement to probate Elmore's sentence, impliedly retaining the discretion to impose whatever other conditions of probation that it might deem appropriate. Our inquiry must necessarily focus on the substance of the agreement between the parties.

"Courts have recognized that accepted plea bargains are binding contracts between the government and defendants." *Hensley v. Commonwealth,* 217 S.W.3d 885, 887 (Ky.App.2007). Once a plea agreement is accepted by a defendant, the agreement is binding upon the Commonwealth—subject to approval by the trial court—and the accused is entitled to the benefit of his bargain. *Id.* at 887; *see also Putty v. Commonwealth,* 30 S.W.3d 156, 159 (Ky.2000). Accordingly, plea agreements are interpreted according to ordinary contract principles. *O'Neil v. Commonwealth,* 114 S.W.3d 860, 863 (Ky.App. 2003). The interpretation of a contract—including a determination of whether it is ambiguous—is a question of law. *Baker v. Coombs,* 219 S.W.3d 204, 207 (Ky.App. 2007). However, because plea agreements concern a waiver of fundamental constitutional rights, (*Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969)), due process principles play a role in interpreting a plea agreement. *See Spence v. Superintendent, Great Meadow Correctional Facility,* 219 F.3d 162, 167–68 (2d Cir.2000); *cf. Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

Both the plea offer and the subsequent agreement provided that "if [Elmore's sentence is] probated by Jefferson County the sentence in Shelby County would **likewise** be probated." (Emphasis added.) At issue is the import of the word *likewise* as used in the offer and agreement. As noted above, Elmore construes *likewise* to mean that the Shelby Circuit Court was intended to enter an order of probation identical to the one entered in the Jefferson Circuit Court. The Commonwealth, on the other hand, argues that this reading by Elmore is too broad and that the terms of the plea agreement were fully satisfied when the trial court entered a judgment and order that simply probated his sen-

tence, contending that perfect congruence with the Jefferson County order was not implied in the term *likewise.*

■■■■ Thus, we must determine the meaning of the plea agreement provision in question since an ambiguity has arisen. In so doing, we recognize that "[a]n ambiguous contract is one capable of more than one different, reasonable interpretation." *Central Bank & Trust Co. v. Kincaid,* 617 S.W.2d 32, 33 (Ky.1981); *see also Frear v. P. T.A. Industries, Inc.,* 103 S.W.3d 99, 106 n. 12 (Ky.2003). To determine if an ambiguity truly exists, we must evaluate whether the provision in question is susceptible of contradictory interpretations. *Transport Ins. Co. v. Ford,* 886 S.W.2d 901, 905 (Ky.App.1994). If an ambiguity exists:

> "the court will gather, if possible, the intention of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written," by evaluating extrinsic evidence as to the parties' intentions.

*Frear,* 103 S.W.3d at 106, *quoting Whitlow v. Whitlow,* 267 S.W.2d 739, 740 (Ky.1954). If it is not ambiguous, a contract will be enforced strictly according to its terms. *O'Bryan v. Massey–Ferguson, Inc.,* 413 S.W.2d 891, 893 (Ky.1966); *Frear,* 103 S.W.3d at 106. A court will interpret those terms "by assigning language its ordinary meaning and without resort to extrinsic evidence." *Id.*

Elmore and the Commonwealth both offer equally plausible interpretations. Merriam–Webster's Collegiate Dictionary provides two arguably applicable definitions for the word *likewise:* "in like manner: similarly" and "in addition." *Merriam–Webster's Collegiate Dictionary* 673 (10th ed.2002). The first definition supports Elmore's view of what *likewise* was intended to mean in the context of the plea agreement, but the second definition comports with the Commonwealth's interpretation. Consequently, while both definitions are reasonable interpretations of the meaning of the word *likewise,* they are also inconsistent with one another in the context of this case. Thus, this portion of the plea agreement is indeed ambiguous.

■■■ Kentucky has no clear rule as to which party should benefit from an ambiguity where a plea agreement is involved. However, our courts have long adhered to the rule *contra proferentem* in construing contracts; *i.e.,* "when a contract is susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it." *B. Perini & Sons v. Southern Ry. Co.,* 239 S.W.2d 964, 966 (Ky.1951), *quoting Theatre Realty Co. v. P.H. Meyer Co.,* 243 Ky. 346, 48 S.W.2d 1, 2 (1932); *see also Perry v. Perry,* 143 S.W.3d 632, 633 (Ky.App.2004). We conclude that this rule should also be applicable to plea agreements. The overwhelming sentiment among our sister states is that any ambiguity in such an agreement should be resolved in favor of the defendant and against the government. *See, e.g., Humphrey v. State,* 686 So.2d 560, 562 (Ala.Crim.App.1996); *Keller v. People,* 29 P.3d 290, 297 (Colo.2000); *State v. Cazzetta,* 97 Conn.App. 56, 903 A.2d 659, 663 (2006); *State v. Cole,* 135 Idaho 269, 16 P.3d 945, 948 (2000); *State v. Wills,* 244 Kan. 62, 765 P.2d 1114, 1120 (1988); *State v. Mares,* 119 N.M. 48, 888 P.2d 930, 932 (1994); *Commonwealth v. Kroh,* 440 Pa.Super. 1, 654 A.2d 1168, 1172 (1995).[1]

---

**1.** Federal courts of appeal have also held that ambiguities in plea agreements should be construed against the government. *See, e.g.,* *United States v. Rodgers,* 101 F.3d 247, 253 (2d Cir.1996); *United States v. Baird,* 218 F.3d 221, 229 (3d Cir.2000); *United States v.*

In *State ex rel. Forbes v. Kaufman,* 185 W.Va. 72, 404 S.E.2d 763 (1991), the Supreme Court of Appeals of West Virginia faced a similar situation in which a plea agreement between the defendant and the state was ambiguous in nature. The Court concluded that:

> the state bears the primary responsibility for insuring precision and unambiguity in a plea agreement because of the significant constitutional rights the defendant waives by entering a guilty plea. If a plea agreement is imprecise or ambiguous, such imprecision or ambiguity will be construed in favor of the defendant.

*Id.* at 768. In reaching its decision, the West Virginia court cited to the opinion of the Fourth Circuit Court of Appeals in *United States v. Harvey, supra,* in which that Court held that "both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant ... for imprecisions or ambiguities in plea agreements"—particularly where the government has proffered the plea terms or prepared the agreement. *Kaufman,* 404 S.E.2d at 768, *quoting Harvey,* 791 F.2d at 300–01. The West Virginia Court noted that such concerns included the fact that a defendant waives a number of "significant constitutional rights" by entering into a plea agreement, including the right to examine and to confront witnesses who would testify against the defendant, the privilege against compulsory self-incrimination, the presumption of innocence, and the right to a speedy trial. *Id.*

As we are persuaded that the reasoning of the West Virginia court is sound, we adopt it as our own and accordingly conclude that the ambiguity in the plea agreement now before us should be resolved against the Commonwealth. Thus, we construe the meaning of *likewise* as used in the plea agreement to equate with the interpretation offered by Elmore.

We have reviewed the plea colloquy that took place on June 10, 2004, during the hearing on Elmore's motion to enter a guilty plea in which the trial judge questioned the parties about the plea agreement. That exchange reflects and reinforces the interpretation that the agreement between the parties supported Elmore's perspective. Of particular relevance here, Judge Stewart ultimately summarized the agreement between the parties as follows:

> ... but the agreement between the defense and the Commonwealth is that if the sentencing judge in Jefferson County grants probation, then it would **automatically** be that I enter, by agreement, **that** order of probation.

(Emphasis added). He later added:

> **I'm going to, in essence, defer to the disposition in Jefferson County,** and even if that disposition is not satisfactory, then I would be, by agreement, bound to go along with that Jefferson Circuit judge.

(Emphasis added). The record of the hearing reflects that the Commonwealth agreed with this characterization of the plea agreement by Judge Stewart. In light of these statements by the judge, his acceptance of the plea agreement, the Commonwealth's acquiescence to his characterization of the agreement, and our decision to construe ambiguities in a plea agreement against the Commonwealth, we conclude that the agreement should be

---

*Randolph,* 230 F.3d 243, 248 (6th Cir.2000); *United States v. Coleman,* 895 F.2d 501, 505 (8th Cir.1990); *United States v. Camarillo–Tello,* 236 F.3d 1024, 1026–27 (9th Cir.2001);

*United States v. Peterson,* 225 F.3d 1167, 1171 (10th Cir.2000); *United States v. Nyhuis,* 8 F.3d 731, 741–42 (11th Cir.1993); *White v. United States,* 425 A.2d 616, 618 (D.C.1980).

construed to require the trial court to enter the **exact** order of probation as that which was entered in the Jefferson Circuit Court.

■ We hold that the Shelby Circuit Court's later inclusion of an additional condition in its order of probation was erroneous, and this matter must be remanded. Upon remand, Elmore shall be entitled to specific performance of the plea agreement at his re-sentencing or to the withdrawal of his original guilty plea pursuant to RCr 8.10. *See Santobello,* 404 U.S. at 262–63, 92 S.Ct. at 499. If he elects specific performance, the court shall re-sentence Elmore according to the terms of the plea agreement as resolved in this opinion.

The judgment and order of probation of the Shelby Circuit Court are vacated, and this matter is remanded for proceedings consistent with this opinion.

ALL CONCUR.