[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15738

_____

D.C. Docket No. 2:06-cr-00022-KD-B-1


UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

KENDRICK MELTON,

Defendant-Appellee.


_____

No. 15-15743

_____

D.C. Docket No.  1:07-cr-00066-KD-M-2


UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

GLENDA GUADALUPE FLORES,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Alabama
_____

(July 10, 2017)

Before ED CARNES, Chief Judge, ROSENBAUM and HIGGINBOTHAM,[*] Circuit Judges.

ED CARNES, Chief Judge:

In negotiating a plea bargain both sides aim for the best terms they can get, placing bets on what the future will hold.  The problem is that the future and certainty are strangers and not everyone wins a wager.  Sometimes a deal, like a tattoo, does not age well and what appeared to be attractive in the past seems unattractive in the future.  But plea agreements, like most tattoos, are written in permanent ink and cannot be redrawn just because one party suffers from the plea bargain form of buyer's remorse.  This case is here because two defendants convinced the district court, over the government's objections, to take up the judicial pen and redraw their freely entered plea agreements whose ink had been dry for nearly a decade.

_____

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

## I. FACTS & PROCEDURAL HISTORY

### A. Melton's Plea Bargain

In July 2006, in keeping with a plea agreement that Kendrick Melton entered into with the government, he pleaded guilty to (1) conspiracy to possess with intent to distribute cocaine base and (2) possession of a firearm during a drug trafficking offense. His guilty plea was accepted and he was convicted of those two crimes.

The plea agreement did not recommend any particular sentence; instead, it said that "[t]he Court will impose the sentence in this case" and that "[t]he United States Sentencing Guidelines apply in an advisory manner to this case." The agreement had this to say about the possibility of a downward departure:

> If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance.

(Emphasis added.) It also provided that: "[T]he defendant reserves the right to

3

petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence." The agreement, however, did not mention 18 U.S.C. § 3553(e), which authorizes the district court, upon the government's motion, to impose a sentence below the statutory mandatory minimum.

Melton's presentence investigation report (PSR) calculated a guidelines range of 235 to 293 months imprisonment for his conspiracy charge. He was also subject to a statutory mandatory minimum sentence of 120 months imprisonment on that charge. 21 U.S.C. § 841(b)(1)(A). Additionally, Melton was facing a mandatory, sixty-month sentence based on the firearms charge, and that sentence had to be served consecutive to his conspiracy sentence. 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii); U.S.S.G. § 5G1.2(a) (2005).[1]

Before the sentence hearing, which occurred in March 2007, and in keeping with the plea agreement, the government moved for a downward departure under U.S.S.G. § 5K1.1 based on Melton's substantial assistance. It asked for a five-level decrease in Melton's offense level on the conspiracy count, which the district

---

[1] A defendant's eligibility for a sentence reduction under § 3582(c)(2) based on an amendment to the guidelines is generally determined by using the guidelines manual in effect at the time of the defendant's original sentence, changing only the section later amended by the Sentencing Commission. U.S.S.G. § 1B1.10(b)(1) (2014). Melton's original PSR calculated his guidelines range based on the 2005 guideline manual; Flores's original PSR used the 2006 manual. None of the differences between those two manuals are relevant to this appeal. Compare U.S.S.G. §§ 5G1.1, 5G1.2, 5K1.1 (2005), with U.S.S.G. §§ 5G1.1, 5G1.2, 5K1.1 (2006).

court granted, resulting in a revised guidelines range of 135 to 168 months imprisonment. The bottom of the revised range was 100 months below the bottom of the unrevised range, and the top was 125 months below the top of the unrevised range.

The district court on its own went further, varying down from the 135 months bottom of the revised sentence range an additional 15 months, resulting in a 120 month sentence on the conspiracy count, which was the statutory mandatory minimum. See 21 U.S.C. § 841(b)(1)(A). The district court also imposed the statutorily mandated minimum sentence of 60 months imprisonment for the firearms charge, which would run consecutively to the 120 month sentence on the conspiracy charge. All seemed well and there was no appeal.

## B. Flores' Plea Bargain

In June 2007, in keeping with a plea agreement she entered into, Glenda Flores pleaded guilty and was convicted of conspiracy to possess with intent to distribute cocaine. Her agreement contained the same provisions about sentencing, substantial assistance, and future guidelines amendments as Melton's did. She had an initial guidelines range of 168 to 210 months imprisonment.

Before sentencing, the government, in keeping with the plea agreement, moved for a downward departure under § 5K1.1 based on the substantial assistance that Flores had provided. It asked the district court to reduce the low end of

Flores' guidelines range by 25 percent.  The court granted the § 5K1.1 motion, resulting in a final guidelines range of 126 to 210 months.  The court then varied downward and imposed the statutory mandatory minimum sentence of 120 months imprisonment.  21 U.S.C. § 841(b)(1)(A).

As in Melton's case, the plea agreement said nothing about the government filing an 18 U.S.C. § 3553(e) motion so that Flores could be sentenced below the mandatory minimum.  And the government clarified at her sentence hearing that it was not filing a joint § 5K1.1 and § 3553(e) motion in her case.  All seemed well and there was no appeal.

### C. Amendments to the Sentencing Guidelines

In 2014, Amendment 782 reduced the base offense levels applicable to a number of drug offenses.  U.S.S.G. App. C. Amend. 782 (2016); compare id. § 2D1.1(c) (2013), with id. § 2D1.1(c) (2014).  That guidelines amendment became retroactive in 2015.  Id. App. C. Amend. 788 (2016).

If Amendment 782 had been promulgated before Melton was sentenced, his guidelines range for the conspiracy charge would have been 121 to 151 months, instead of 235 to 293 months.  Id. § 2D1.1(c)(4); id. ch. 5, pt. A (2014).  If the government filed the same § 5K1.1 substantial assistance motion requesting a five-level downward departure, Melton's guideline range — assuming for the moment that the 120-month mandatory minimum did not apply — would have been 77 to

96 months on the conspiracy count.

If Amendment 782 had been promulgated before Flores was sentenced, her guidelines range would have been 135 to 168 months, instead of 168 to 210 months.  Id. § 2D1.1(c)(4), ch. 5, pt. A (2014).  If the government filed the same § 5K1.1 substantial assistance motion requesting a twenty-five percent downward departure from the low end of the guidelines range, Flores' guideline range — again assuming that the 120-month minimum did not apply — would have been 101 to 168 months.

### D. Melton's and Flores' Motions to Reduce Their Sentence

After Amendment 782 became retroactive in 2015, Melton filed an 18 U.S.C. § 3582(c)(2) motion seeking to reduce the sentence that had been imposed on him in 2007, and Flores filed a similar motion seeking to reduce the sentence imposed on her in 2008.  They argued that, if the Amendment could be coupled with the § 5K1.1 substantial assistance motions that the government had filed before the initial sentences were imposed, and if the government could be persuaded or forced to file an 18 U.S.C. § 3553(e) motion authorizing the court to depart below the statutory mandatory minimum, they might receive significantly lower sentences.

The government opposed the motions, pointing out that it had not filed a § 3553(e) motion during the initial sentence proceedings to permit a sentence

7

below the mandatory minimum, was not filing one now, and was convinced that it could not file one in a § 3582(c)(2) post-amendment proceeding even if it wanted to do so.  As a result, according to the government, neither Melton nor Flores could be sentenced below the statutory mandatory minimum sentences they had already received.

The district court rejected the government's position.  It concluded that the government would breach its plea agreements with Melton and Flores unless the government acted to ensure that they received the same extent of downward departure from their post-Amendment guidelines ranges that they had received from the pre-Amendment ranges when they were initially sentenced.  Although the plea agreements had never required the government to request any particular departure or assign a specific value to Melton's and Flores' assistance, the district court believed that once the government assigned values to their assistance in its § 5K1.1 motions at their original sentence proceedings, those values — a five-level downward departure for Melton and a 25 percent reduction in the lower end of the guidelines range for Flores — became part of the plea agreements even though the government did not agree that they would or realize that they had.

As a result, the district court ruled that in order to ensure that the defendants continued to receive in the new sentence proceedings the full benefit of their substantial assistance, Melton had to be given the full value of a five-level

8

downward departure from the post-Amendment 782 guidelines range and Flores had to be given the full value of a 25 percent downward departure from the lower end of the post-Amendment guidelines range.

The court recognized that the obstacle to implementing its vision of what should be done was the statutory mandatory minimum of 120 months. If the statutory minimum remained in place, Melton's guidelines range could be reduced by only one month as a result of the government's § 5K1.1 motion (instead of the 44 months it had been reduced at the time of his original sentencing) and Flores' guidelines range could be reduced by only 15 months (instead of the 34 months it had been at the original sentencing). Each post-Amendment guidelines range would be lower than the pre-Amendment guidelines ranges, but if the mandatory minimum stayed in place the extent of the reduction because of substantial assistance would not be nearly as great as the district court believed it should be. The result, as the court viewed it, would be that Melton and Flores would be deprived of the full value of their substantial assistance. And because the district court in the initial sentence proceedings had already varied downward from the pre-sentence guidelines ranges to the mandatory minimum sentences, neither would receive any relief under § 3582(c)(2).

The court saw a way around the problem. Section 3553(e) authorizes a court to sentence a defendant below the statutory mandatory minimum if the government

9

files a motion requesting that be done based on the defendant's substantial assistance. 18 U.S.C. § 3553(e). The obstacle to that work around in these two cases was that the government would not cooperate and took the position that it could not file such a motion in a § 3582(c)(2) proceeding even if it were inclined to do so. The court worked around that obstacle as well, ruling that the nearly decade-old plea agreements, though they did not say it, required the government to file § 3553(e) motions at the resentence proceedings. And the court rejected the government's argument that § 3553(e) categorically did not apply in § 3582(c)(2) proceedings.

The district court ordered the government to file a § 3553(e) motion in each case, and the government did so under protest. To no one's surprise, the court granted the defendant's motions to reduce their sentences and took advantage of the § 3553(e) motions it had ordered the government to file to reduce Melton's sentence on the conspiracy count to 86 months imprisonment, and reduce Flores' sentence to 101 months imprisonment. Both of those sentences were within the post-Amendment 782 revised guidelines ranges but below the 120-month mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(A): in Melton's case 34 months below, and in Flores' case 19 months below.

The government appeals the orders granting the defendants' motions for

10

reduced sentences in both cases.[2]

## II. ANALYSIS

"A district court may not modify a term of imprisonment once it has been imposed, except in some cases where modification is expressly permitted by statute or [Rule 35 of the Federal Rules of Criminal Procedure]." United States v. Jackson, 613 F.3d 1305, 1308 (11th Cir. 2010). One statute authorizing district courts to modify previously imposed sentences is 18 U.S.C. § 3582(c), which is at the heart of this case.

Generally speaking, a defendant who was sentenced to the mandatory minimum penalty established by statute is not entitled to any relief under § 3582(c)(2), even if a retroactive amendment to the guidelines would otherwise reduce his sentencing range below what it was before the amendment. Section 3582(c)(2) allows a district court to reduce a defendant's sentence based on an

---

[2] Because the government did not move to stay the district court's order, Flores has been released from custody and removed from the country. She contends that her removal moots the government's appeal, but that argument is foreclosed by binding circuit precedent. See United States v. Orrega, 363 F.3d 1093, 1095–96 (11th Cir. 2004) (holding in analogous factual circumstances that deportation did not moot the government's appeal from a district court's sentencing decision because the defendant might re-enter the United States).

Flores also contends that the government's failure to seek a stay and its failure to pursue an interlocutory appeal from the district court's order directing it to file an 18 U.S.C. § 3553(e) motion amount to a waiver of its appellate rights. She is mistaken. A failure to seek a stay or pursue an interlocutory appeal generally does not waive or otherwise prevent a party from appealing an adverse judgment. See, e.g., In re Seidler, 44 F.3d 945, 948 (11th Cir. 1995); Am. Grain Ass'n. v. Lee-Vac, Ltd., 630 F.2d 245, 247 (5th Cir. Unit A 1980); Chi. Bd. of Educ. v. Substance, Inc., 354 F.3d 624, 626 (7th Cir. 2003); Chambers v. Ohio Dep't of Human Servs., 145 F.3d 793, 796 (6th Cir. 1998).

amendment to the sentencing guidelines only "if such a reduction is consistent with

applicable policy statements issued by the Sentencing Commission."

The Commission's policy statement concerning the retroactive application

of guidelines amendments is U.S.S.G. § 1B1.10.  It provides that:

> In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

U.S.S.G. § 1B1.10(b)(1) (2014).  That means the determination of whether a

defendant is eligible for a § 3582(c)(2) reduction is to be made using the guidelines

manual that was used to sentence the defendant originally, substituting only those

amendments listed in § 1B1.10(d).  A court should then adjust the guidelines range

using the same enhancements and reductions that were applied at the original

sentencing.  Id. § 1B1.10(b)(1) (instructing the court to "leave all other guideline

application decisions unaffected" in determining a defendant's eligibility for a

sentence reduction).

Following those instructions, Melton and Flores were not entitled to receive

new sentences below 120 months.  As we explained above, Melton's base offense

level for the conspiracy count, if Amendment 782 had been effective at the time of

his sentencing, would have been 32.  Once reductions for his acceptance of responsibility and substantial assistance were applied, the district court would have calculated an offense level of 24.  Combining that offense level with a criminal history category of IV results in a guidelines range of 77 to 96 months, which is lower than the guidelines range that applied to his conduct at his original sentencing.

Because a statutory mandatory minimum sentence of 120 months applied to the conspiracy count, however, the district court (but for the § 3553(e) motion it forced the government to file) could not have stopped there.  The court, instead, would have had to follow U.S.S.G. § 5G1.1(b) (2005), which provides that, if the calculated guidelines range is below the statutory mandatory minimum, the statutory minimum "shall be the guideline sentence."  Because the 120 month mandatory minimum Melton faced is greater than the 96-month upper end of his guidelines range, his guidelines sentence under Amendment 782 would have been 120 months — the sentence he received initially.  He therefore was not eligible for a sentencing reduction based on Amendment 782.  Cf. United States v. Peters, 524 F.3d 905, 906–07 (8th Cir. 2008).

So too for Flores.  Had her guidelines range been calculated after Amendment 782 became effective, she would have had a base offense level of 32, a criminal history category of II, and an initial guidelines range of 135 to 168

months.  After the § 5K1.1 departure was applied, her guidelines range would have been 101 to 168 months.  The district court would then have had to comply with U.S.S.G. § 5G1.1(c)(2) (2006), which prohibits a sentence below a mandatory minimum.  That means that Flores' post-Amendment 782 guidelines range would have been 120 to 168 months.  See U.S.S.G. § 5G1.1 cmt. (2006).  Because her original sentence was 120 months imprisonment, Flores would not be entitled to any reduction based on Amendment 782.  Peters, 542 F.3d at 906–07.

Given the general rule we have just described, the only way the new sentences the district court imposed in these cases were permissible is if its orders requiring the government to file the § 3553(e) motions were.  We turn to that question now.  The district court's reasoning rests on two premises.  One is that the government violated the promises it made in the initial plea bargain agreements by refusing years later to file § 3553(e) motions permitting the district court to depart downward below the statutory mandatory minimum sentence in each of these two cases.  The second premise that underlies the district court's reasoning is that a § 3553(e) motion can be filed and granted in a § 3582(c)(2) post-amendment resentencing proceeding, at least when it is necessary to give the defendant the benefit of his bargain with the government.  We have no need to address the second premise but instead start and end with the first one.

The district court, in effect, grafted the government's earlier § 5K1.1

14

motions onto Melton's and Flores' plea agreements and transformed those motions into promises. It viewed those motions as clarifying the meaning of the original plea agreements by adding an ongoing promise to do whatever became necessary to ensure that, if the guidelines changed in the future, the defendants would receive just as much benefit from their substantial assistance as they did before the amendments. And whatever was necessary included, the district court thought, filing a § 3553(e) motion authorizing the court to sentence the defendant below the mandatory minimum sentence prescribed by statute.

That is not what the plea agreements say. The relevant promise that the government made to Melton and Flores in the plea agreements was simply to "move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure" if the government determined that they had provided substantial assistance to the government. That is all the agreements say about a substantial assistance motion. They say nothing about the government filing a motion under § 3553(e) to allow the district court to depart below the statutory mandatory minimum that applied to the convictions. Nothing at all. Silence is not ambiguity. The plea agreement unambiguously shows that no promise was made about filing a § 3553(e) motion either in the initial sentence proceeding or in some future proceeding under § 3582(c)(2) based on a post-amendment change in the

15

guidelines.

The Supreme Court has expressly held that a motion under § 5K1.1 is <u>not</u> the same as a motion under § 3553(e). <u>Melendez v. United States</u>, 518 U.S. 120, 124–30, 116 S. Ct. 2057, 2060–63 (1996). It follows that a promise to file a motion under § 5K1.1 is not a promise to file a motion under § 3553(e). A promise to do one thing is not a promise to do that thing and something else. And a party who fulfills a promise to do one thing does not thereby obligate itself to do something else.[3]

We have said in the past that we will not adopt "hyper-technical" readings of the text of plea agreements, will view them against the background of the plea negotiations, and will not adopt an interpretation of them that "directly contradict[s] an oral understanding" between the government and the defendant. <u>United States v. Harris</u>, 376 F.3d 1282, 1287 (11th Cir. 2004). But these rules have no application here. Despite Melton's assertion to the contrary, we are not adopting a rigidly literal interpretation of Melton's and Flores' plea agreements. We are simply refusing to read into them promises that were not made. And

---

[3] Melton protests that his was a standard plea agreement in the Southern District of Alabama and that standard agreements in that district never discuss § 3553(e) motions, even when they are intended. There is no evidence in the record to that effect and, in any event, it would not mean that such a motion was intended in these cases. Nor does the fact, if it be a fact, that Melton and Flores were presented with standard plea agreements mean they could not have negotiated with the government for more or better terms. The government might have agreed to any requested changes, or it might not have. But a defendant who did not even request such a provision cannot be heard to insist that one should be added a decade later.

16

Melton and Flores have neither presented nor proffered any evidence that during plea negotiations the government agreed to file a § 3353(e) motion.

The parties did agree to recognize the defendants' right to file a § 3582(c)(2) motion if there was a retroactive amendment to the guidelines that might be applicable, and the plea agreement recognizes that.  But the parties did not agree that the government wouldn't oppose a future § 3582(c)(2) motion, nor did they agree that if one was filed the government would also file a § 3553(e) motion asking the court to depart below the mandatory minimum sentence.

As the government concedes, it "may invoke § 3553(e) in a motion under § 5K1.1 . . . ."  But the fact that the government may <u>sometimes</u> combine with its § 5K1.1 motion an additional § 3553(e) motion does not transform every § 5K1.1 motion into a joint § 5K1.1 and § 3553(e) motion.  <u>See</u> <u>Melendez</u>, 518 U.S. at 124–30, 116 S. Ct. at 2060–63.  It also doesn't make every promise to file a § 5K1.1 motion a promise to also file a § 3553(e) motion.

Nor are we persuaded that the references in the plea agreements to the possibility that the government might file motions under Rule 35 of the Federal Rules of Criminal Procedure — which <u>does</u> allow the court to depart below a mandatory minimum sentence — suggest that when the agreements say § 5K1.1 they mean "§ 5K1.1 and § 3553(e)."  Rule 35(b) is a vehicle by which the government can ask a district court to reward with sentence reductions defendants

17

who provide post-sentencing substantial assistance. And a Rule 35(b) motion always allows the district court to depart below the mandatory minimum. Fed. R. Crim. P. 35(b)(4). So if the government wants to reward post-sentencing assistance by way of a Rule 35(b) motion, it has no choice but to authorize the district court to depart below the mandatory minimum. But as the Supreme Court made clear in Melendez, that is simply not true of a § 5K1.1 motion. Melendez, 518 U.S. at 124–30, 116 S. Ct. at 2060–63. The government can ask the court to reward pre-sentencing substantial assistance without authorizing a sentence below the statutory minimum by filing a § 5K1.1 motion and declining to file a § 3553(e) motion. See id. Which is exactly what the government did in this case.

To the extent that the plea agreements' references to Rule 35 could be considered to include a promise that the government would allow the district court to depart below applicable mandatory minimums, it was a promise to do so based on post-sentencing substantial assistance. It could not have been more because Rule 35(b) applies only to substantial assistance rendered after sentencing. Fed. R. Crim. P. 35(b)(1). Both Melton and Flores provided all of their assistance to the government before sentencing, not afterwards.

We recognize that, in hindsight, what Melton and Flores received in return for their guilty pleas is less valuable in the post-Amendment 782 world than it was when those agreements were signed and accepted a decade ago in the pre-

18

Amendment 782 world. But plea agreements are interpreted by what they say, not what they might have said if the defendants or the government could have foreseen the future. Courts are not authorized to ink in revisions to ensure that the defendants continue to receive the same value regardless of future changes in the law. Cf. United States v. Howle, 166 F.3d 1166, 1168–69 (11th Cir. 1999) ("Modification of the terms of a plea agreement is, however, beyond the power of the district court. Such a modification would impermissibly alter the bargain at the heart of the agreement — without the defendant's waiver of his right to appeal, the Government might not have been willing to dismiss four of the five counts contained in the indictment.") (footnote and citations omitted). As one of our sister circuits aptly explained:

> In a contract (and equally in a plea agreement) one binds oneself to do something that someone else wants, in exchange for some benefit to oneself. By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect.

United States v. Bownes, 405 F.3d 634, 636 (7th Cir. 2005). Buyer's remorse on the part of a defendant does not justify rewriting a plea agreement. We would no more hold the government to a promise that it never made than we would hold the defendants to one they never made.

    If Melton and Flores wanted to insure the value of their substantial

19

assistance against the chance that a future guidelines amendment would bring them a new guidelines range low enough that a § 3553(e) motion would make a difference, they should have bargained for a provision providing that protection. But they did not or, if they did, couldn't get the government to agree to it. Either way, it is too late now to add that provision to their plea agreements. The district court erred by rewriting the plea agreement.

## III. CONCLUSION

Both Melton and Flores were sentenced to the statutory mandatory minimum applicable to their offenses at their original sentencing. Because the district court had no authority to compel the government to file § 3553(e) motions in this case, it had no authority to sentence the defendants below that mandatory minimum. As a result, the defendants were not eligible for relief under § 3582(c)(2).

We therefore **REVERSE** the decisions of the district court and **VACATE** its orders granting Melton's and Flores' motions for relief under § 3582(c)(2) and imposing lower sentences. Both cases are **REMANDED** to the district court with instructions to deny the defendants' motions and re-impose their original sentences.