RENDERED: MARCH 14, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2017-SC-000629-MR

JOSHUA T. HAMMOND             APPELLANT

ON APPEAL FROM FRANKLIN CIRCUIT COURT
V.          HONORABLE PHILLIP J. SHEPHERD, JUDGE
NO. 12-CR-00099-002

COMMONWEALTH OF KENTUCKY          APPELLEE

## OPINION OF THE COURT BY JUSTICE HUGHES

### AFFIRMING

In 2014, Joshua T. Hammond first appealed to this Court from a Franklin Circuit Court judgment sentencing him to twenty-five years for first-degree robbery, first-degree assault, reckless homicide, and tampering with evidence. Following the guilt phase of a jury trial, Hammond waived jury sentencing and entered a plea agreement with the Commonwealth as to sentencing, while reserving his right to appeal his conviction. The trial court sentenced Hammond to twenty-five years in accordance with the agreement. On Hammond's appeal from the judgment, this Court reversed the first-degree assault conviction and remanded the case to the trial court to enter a new judgment. *Hammond v. Commonwealth*, 504 S.W.3d 44 (Ky. 2016). On remand, the trial court again sentenced Hammond to twenty-five years consistent with this Court's opinion. Hammond now appeals from that second

judgment, raising a new issue that could not have been included in the first appeal.

## FACTS

To briefly reiterate the underlying facts, Hammond and two other men drove to Lexington to purchase drugs. After making the purchase, Hammond devised a plan to rob Charles Monroe, a Frankfort drug dealer. Hammond set up a meeting with Monroe and the four men drove to a local Wal-Mart. After Hammond and Monroe spent some time in the store, they returned to Hammond's truck but instead of going toward Monroe's home, Hammond drove in a different direction. When Monroe stated that they were going the wrong way, Hammond stopped the truck on the side of an interstate ramp and demanded that Monroe hand over his money and drugs. Hammond then began hitting Monroe in the head with a police baton. Monroe attempted to defend himself, but Hammond walked around to the passenger side while one of the other men held Monroe in a chokehold. Hammond continued striking Monroe on the head with the baton and searched for drugs and money, ultimately collecting $160 and some pills. Hammond pulled Monroe from the truck and left him on the side of the highway. Monroe died as a result of the assault, and the medical examiner stated the death was likely a result of an injury to Monroe's throat, caused by the chokehold.[1]

---

[1] A full recitation of the facts can be found in *Hammond v. Commonwealth*, 504 S.W.3d 44 (Ky. 2016).

In 2014, a Franklin Circuit Court jury found Hammond guilty of first-degree robbery, first-degree assault, reckless homicide and tampering with evidence. After the guilt phase, Hammond entered into a plea agreement with the Commonwealth to avoid the jury sentencing phase, and the trial court sentenced Hammond to twenty years for first-degree robbery and twenty years for first-degree assault (to be served concurrently), and five years each for reckless homicide and tampering with evidence (to be served concurrently) for a total sentence of twenty-five years.

After entry of the judgment, Hammond appealed as a matter of right, and this Court rendered an opinion on December 15, 2016, affirming in part, reversing in part, and remanding. *Hammond*, 504 S.W.3d at 44. Hammond raised five issues on appeal, and this Court reversed and remanded the case solely as to the first-degree assault conviction.

In that earlier appeal, Hammond challenged his first-degree assault conviction on three different grounds. He contended that the assault charge merged into the robbery charge, that the assault charge merged into the homicide charge, and that he should have received a directed verdict on the assault charge due to insufficient evidence that he inflicted a serious physical injury on Monroe. Hammond argued that the only physical injury to Monroe serious enough to support an assault charge was the throat injury, and this Court agreed. According to the medical testimony, the head wounds Hammond inflicted on Monroe with the baton were superficial and did not cause Monroe's death. Since the head injury could not serve as the basis for the assault

3

charge, the only other viable injury was the throat injury. Justice Venters, writing for a unanimous Court, concluded that a "single injury which proves to be fatal cannot simultaneously serve as the injury in an underlying assault conviction *and* the fatal wound resulting in the death underlying the homicide conviction." *Hammond*, 504 S.W.3d at 52. Since Monroe ultimately died because of the throat injury, the injury should have only supported the reckless homicide charge and not the assault charge.

This Court also agreed with Hammond that the first-degree assault charge merged into the reckless homicide charge. The Court determined that "either the trial court erred by submitting to the jury a first degree assault charge based upon evidence insufficient to establish that the head wound was a 'serious physical injury'; or, the jury was improperly permitted to find Appellant guilty of both first degree assault *and* reckless homicide based upon the serious injury to Monroe's throat." *Id.* at 53. Regardless of which specific error occurred, Hammond's first-degree assault conviction was reversed, and the case was remanded to the trial court for re-sentencing, removing the first-degree assault conviction but leaving the other convictions intact. This Court noted that since Hammond was sentenced to twenty years on both the assault and robbery charges, the reversal of the assault conviction did not affect Hammond's total twenty-five year sentence or parole eligibility. *Id.*

On October 12, 2017, the trial court conducted a re-sentencing hearing where Hammond moved to withdraw the sentencing plea agreement and to have a jury impaneled for the penalty phase. The trial court denied his motion,

4

stating that the Kentucky Supreme Court ruling contemplated re-sentencing only to clarify that the assault conviction was set aside, and reversal of the assault conviction did not affect Hammond's final sentence. Hammond was re-sentenced to twenty-five years, and now appeals from the trial court's second judgment.

## ANALYSIS

Hammond argues that our holding in *Hammond v. Commonwealth* changed the terms of his plea agreement and because of this change, he should be permitted the right to proceed with a new jury empaneled for the penalty phase. Specifically, he argues that he now faces a new set of circumstances, *i.e.*, he was originally facing a fifty-year sentence for all his charges while the assault charge was still viable, but since the assault conviction has been reversed, the longest sentence he could have received was thirty years.

### I.      Hammond waived his right to jury sentencing.

After the guilt phase of trial, Hammond entered a guilty plea pursuant to a deal with the Commonwealth and waived his right to have a jury sentence him. To be valid, a guilty plea must be entered "intelligently and voluntarily." *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001). In determining whether a plea is voluntary, trial courts make a fact-specific inquiry into the totality of the circumstances surrounding the plea. *Porter v. Commonwealth*, 394 S.W.3d 382, 385 (Ky. 2011). In this case, the record was not preserved. Two volumes of the trial court record are missing, and there are no video recordings of the original trial court proceedings in the appellate record. When

5

issues arise as to the completeness of the record, parties are allowed to submit narrative statements to supplement the record. *Early v. Commonwealth*, 470 S.W.3d 729, 734 (Ky. 2015) (citing Kentucky Rule of Civil Procedure (CR) 75.13). No narrative statements were submitted.

"It has long been held that, when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985). The record does not include a copy of the plea agreement or a recording of the trial court's acceptance of the agreement. With no such record, and no narrative supplementation, we are left to presume that the omitted plea agreement was valid, and the trial court's acceptance of the agreement was proper.

All defendants have the right to a jury trial in all criminal prosecutions. Kentucky Revised Statute (KRS) 29A.270(1). This is a fundamental right in our legal system, and Hammond was entitled to, and received, this right. KRS 29A.270; U.S. Const. amend. VI. "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the Commonwealth." Kentucky Rule of Criminal Procedure (RCr) 9.26(1). KRS 532.055(2) requires that "[u]pon return of a verdict of guilty . . . the court shall conduct a sentencing hearing before the jury, if such case was tried before a jury. In the hearing the jury will determine

the punishment to be imposed within the range provided elsewhere by law."[2]

Under Kentucky law, a "criminal defendant has a statutory right to have his sentence set by a jury." *Wilson v. Commonwealth*, 765 S.W.2d 22 (Ky. 1989).

By entering a plea agreement, Hammond waived his right to be sentenced by the jury. "Among the rights recognized as requiring the defendant's personal waiver are the rights 'to plead guilty, waive a jury . . . or take an appeal.'" *Commonwealth v. Simmons*, 394 S.W.3d 903, 912 (Ky. 2013) (quoting *Gonzalez v. United States*, 553 U.S. 242, 251 (2008)). Since there is no record of Hammond's waiver, this Court is left to presume that Hammond was adequately apprised of his rights and voluntarily made the decision to waive his right to jury sentencing.

## II. The plea agreement constituted a contract between Hammond and the Commonwealth, but there were no ambiguities.

"Generally, plea agreements in criminal cases are contracts between the accused and the Commonwealth, and are interpreted according to ordinary contract principles." *McClanahan v. Commonwealth*, 308 S.W.3d 694, 701 (Ky. 2010). The plea agreement between Hammond and the Commonwealth indisputably should be construed as a contract. The general

---

[2] In *Commonwealth v. Reneer*, 734 S.W.2d 794, 796 (Ky. 1987), this Court recognized KRS 532.055 as "a legislative attempt to invade the rule making prerogative of the Supreme Court by legislatively prescribing rules of practice and procedure [and therefore] it violates the separation of powers doctrine enunciated in Section 28 of the Kentucky Constitution." In the spirit of comity, this Court declined to hold the statute unconstitutional and agreed to follow it for the time being. This Court recently reiterated the continuing acceptance of the statute in *Huddleston v. Commonwealth*, 542 S.W.3d 237, 240 (Ky. 2018).

rule of law is that a court's construction of a contract should be "controlled by the intention of the parties." *Gibson v. Sellers*, 252 S.W.2d 911 (Ky. 1952). By entering the plea agreement and waiving jury sentencing, Hammond made a knowing and voluntary decision to avoid a potentially longer sentence by entering into an agreement with the Commonwealth for a specific term of years. Conversely, the Commonwealth sought to avoid the possibility that the jury would recommend a light sentence. The intention of the parties in entering a plea agreement is clear.

In this appeal, Hammond argues that this Court's opinion reversing the assault conviction changed the terms of the contract and thereby created an ambiguity. Hammond relies on *Elmore v. Commonwealth*, 236 S.W.3d 623 (Ky. App. 2007), a Kentucky Court of Appeals' case that reviewed an ambiguity in a plea agreement. In *Elmore,* the defendant entered a plea agreement with the Commonwealth in which the Commonwealth agreed to recommend that his sentence in the current, Shelby County case would run concurrently with a ten-year sentence entered against him in Jefferson County. *Id.* at 625. The agreement also stated that if Elmore was "probated by Jefferson County the sentence in Shelby County would likewise be probated." *Id.* Elmore's appeal arose over the correct meaning of "likewise" in his agreement. *Id.* at 626. Since the term had two plausible meanings in the context of the plea agreement, the Court of Appeals was tasked with interpreting the term and resolving the ambiguity. *Id.* at 628-29. The Court of Appeals held that any ambiguity in a plea agreement "should be resolved in favor of the defendant

8

and against the government." *Id.* at 627. In this case, the plea agreement between Hammond and the Commonwealth did not contain an ambiguity at the outset and no contract ambiguity was created by this Court's directive on remand. The plea agreement remains intact, and none of its terms are presented to this Court as requiring interpretation.

"An ambiguous contract is one capable of more than one different, reasonable interpretation." *Central Bank & Tr. Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981). "A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms." *Bd. of Trustees of Kentucky School Bds. Ins. Tr. v. Pope*, 528 S.W.3d 901, 906 (Ky. 2017). "In the absence of ambiguity, . . . a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence. A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694-95 (Ky. 2016) (internal citations omitted).

For an ambiguity to exist in Hammond's plea agreement, the terms would need to be open to multiple interpretations, or contain unclear language. This ambiguity must have existed in the contract at the time it was formed, and that, obviously, is not the nature of his argument on appeal. Although framed as a contract ambiguity, Hammond is essentially seeking a "do-over," with hopes of having a jury sentence him, despite having already waived that right.

9

We acknowledge that Hammond has had a change in circumstances. Hammond initially faced up to fifty years in prison but the reversal of the assault conviction changed his circumstances. If the assault charge had been dismissed pretrial or by directed verdict, Hammond would have only faced up to thirty years in prison following the guilt phase. But Hammond apparently fails to recognize that he initiated this change in circumstances by appealing his case, a right he specifically reserved in the plea agreement. His successful appeal on the assault conviction does not invalidate the plea agreement. "[P]lea agreements are interpreted by what they say, not what they might have said if the defendants or the government could have foreseen the future." *United States v. Melton*, 861 F.3d 1320, 1329 (11th Cir. 2017).[3]

As observed by the United States Court of Appeals for the Seventh Circuit:

---

[3] *United States v. Melton* involved two defendants who entered plea agreements with the government that stated the court would impose a sentence, and that the United States Sentencing Guidelines would apply in an "advisory manner." 861 F.3d at 1322. The agreements also stated that the United States agreed to move for downward departure from the Sentencing Guidelines if the defendants assisted the United States in investigation or prosecution of other criminal offenses. *Id.* The agreements did not say anything about filing motions under 18 U.S.C. § 3553(e), which would allow the district court to impose a sentence below the statutory mandatory minimum. *Id.* The defendants assisted the United States, and the United States moved for a downward departure from the Sentencing Guidelines. *Id.* Several years later, the Sentencing Guidelines were amended, applying retroactively, and the amendment combined with the downward departure would have resulted in significantly lower sentences for the defendants. *Id.* at 1324. The defendants filed motions seeking to reduce their sentences, and the district court held that the government would breach its plea agreement with the defendants unless the government acted to ensure they received the same level of downward departure from the post-Amendment guidelines ranges that they received when they were originally sentenced. *Id.* The Court of Appeals reversed, reading the plea agreements for what they said, not what they did not say. *Id.* at 1329.

> In a contract (and equally in a plea agreement) one binds oneself to do something that someone else wants, in exchange for some benefit to oneself. By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect.

*United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Hammond specifically reserved his right to appeal the finding of guilt in exchange for the twenty-five-year sentence. At the time he entered the agreement, there was no way to know whether his claims would be successful on appeal. "Courts are not authorized to ink in revisions to ensure that the defendants continue to receive the same value regardless of future changes . . . ." *Melton*, 861 F.3d at 1329.

Here, Hammond bargained with the Commonwealth for a twenty-year concurrent sentence for both the assault and robbery charge, each of which could have carried a twenty-year sentence independently. Hammond accepted and received the bargained-for sentence. His partially successful appeal does not call the entire plea agreement into question. Simply put, a change in circumstances is a risk inherent in all contracts, including Hammond's plea agreement, and changed circumstances do not permit his withdrawal from the agreement.

Finally, this Court's directive in *Hammond v. Commonwealth* was clear: "this case is remanded for entry of a new judgment consistent with this opinion." 504 S.W.3d at 58. "Because the twenty year assault conviction was adjudged to run concurrently with the first degree robbery conviction, the

reversal of the assault conviction affects neither [Hammond's] total sentence nor his parole eligibility." *Id.* at 54. We find no basis for disturbing Hammond's valid jury waiver and plea agreement.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Franklin Circuit Court.

Minton, C.J.; Keller, Lambert, VanMeter, and Wright, JJ., sitting. All concur.

COUNSEL FOR APPELLANT:

Mark H. Woloshin
Woloshin Law Office

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General
Office of Criminal Appeals