**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13312

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*versus*

ERIKA KELLEY DAY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cr-00052-JB-MU-1

_____

Before WILLIAM PRYOR, Chief Judge, and LAGOA and KIDD, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a district court, on a motion to depart from a statutory minimum prison sentence for substantial assistance for one offense, *see* 18 U.S.C. § 3553(e), may

depart from a separate statutory minimum sentence for another offense. Erika Day was convicted of both methamphetamine possession with intent to distribute and firearm use attendant to a drug crime. Each offense carries a statutory minimum prison sentence of five years. The government moved to depart below the statutory minimum for the offense of methamphetamine possession. The district court granted that motion but sentenced Day below the statutory minimum for both offenses. Because section 3553(e) allows a departure from a statutory minimum sentence only when the government moves for it, we vacate and remand for resentencing.

## I. BACKGROUND

In her written plea agreement with the government, Erika Kelley Day provided an undisputed factual resume. Deputies with the Mobile County Sheriff's Office arrested Day in a drug bust after the Office received a tip that a fugitive was staying at a local park for recreational vehicles. Upon arrival at the location, a corporal saw a car, driven by Day, leave the lot. Deputies then stopped the car for a traffic violation. While conducting the traffic stop, they saw crystal methamphetamine in the front seat. They arrested Day, and upon patting her down, found that she was carrying a handgun.

Two months later, a federal grand jury indicted Day on two counts. Count one, methamphetamine possession with intent to distribute, carries a minimum sentence of five years. 21 U.S.C. § 841(b)(1)(B)(8). Count two, firearm use attendant to a drug crime,

carries a consecutive minimum sentence of five years. 18 U.S.C. § 924(c)(1)(A). Day pleaded guilty to both counts.

In her plea agreement, the government promised Day that if she cooperated and her cooperation "result[ed] in substantial assistance" to the government, it would "move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure." The same paragraph provided that the determination whether Day provided substantial assistance was "a decision reserved by the United States in the exercise of its sole discretion," and that the government "specifically reserve[d] the right to make the decision relating to the extent of any such departure request." After warning Day that it could impose a sentence "more severe or less severe" than provided by the guidelines and that she faced two statutory minimum sentences, the district court accepted her plea.

The government and Day agreed to postpone sentencing several times because her cooperation "was not yet completed." The government later moved for a downward departure from the statutory minimum sentence Day faced for count one, under section 5K1.1 and section 3553(e). The motion did not mention count two.

After calculating the guideline range, the district court granted the substantial-assistance motion. It decided that Day's cooperation warranted an extraordinary reduction and stated that the "government's 5K motion" allows "the Court to move below statutory minimum sentencing." The district court issued "a time-

served sentence on Count One," and "one day on Count Two to be served consecutively." The prosecutor objected because "[t]he government's motion was restricted to Count One," and reduction below the statutory minimum on the other count was "an illegal sentence." The district court replied, "I disagree, and so I'm going to overrule your objection."

## II. STANDARD OF REVIEW

"We review *de novo* the legality of a sentence." *United States v. Hall*, 64 F.4th 1200, 1202 (11th Cir. 2023).

## III. DISCUSSION

Section 3553(e) allows a district court to depart from a statutory minimum "upon motion of the Government." 18 U.S.C. § 3553(e). Any departure must be based on "only substantial assistance factors." *United States v. Mangaroo*, 504 F.3d 1350, 1356 (11th Cir. 2007). The text and structure of section 3553(e), along with our precedents, make clear that a substantial-assistance motion for one count does not allow a district court to depart from the statutory minimum on another count.

Start with the statutory text. Subsection (e) uses the singular when allowing a district court to depart below "a level established by statute as *a minimum sentence*." 18 U.S.C. § 3553(e) (emphasis added). Although district courts often pronounce "[m]ultiple sentence[s] as an [a]ggregate" "for administrative purposes," *id.* § 3584(c), each offense still carries a separate sentence. Because subsection (e) applies to "a minimum sentence," not the aggregate

of multiple sentences, a motion for departure on one sentence does not apply to other sentences.

A departure from the statutory minimum is possible only "[u]pon motion of the Government." *Id.* § 3553(e). District courts have no authority to depart below a statutory minimum without "a Government motion requesting or authorizing the district court to . . . impose such a sentence." *Melendez v. United States*, 518 U.S. 120, 125–26 (1996). Because the government did not move to depart below the statutory minimum for count two, the district court lacked the authority to do so independently.

Our precedent confirms this conclusion. We have held that the government has discretion to "direct [a] Rule 35(b) motion to a specific count." *United States v. McNeese*, 547 F.3d 1307, 1309 (11th Cir. 2008). And we have "accord[ed]" section 3553(e) and Rule 35(b) "the same interpretation." *United States v. Aponte*, 36 F.3d 1050, 1052 (11th Cir. 1994).

Day asserts that section 3553(e) "says nothing about sentence relief when multiple counts in an indictment carry minimum mandatory sentences." But we disagree. A plain reading of the statutory text dispels any doubt about its application, and Day offers no reason to reject the answer required by the text and our precedent.

Day also argues that we must affirm to cure the prosecution's alleged breach of her plea agreement. In her telling, nothing in the plea agreement allowed the government to "unilaterally limit its departure obligation to a single count." And if the plea

agreement was ambiguous on any point, we must construe the agreement "against the government."

At the outset, we doubt that breach of a plea agreement could grant the district court authority to bypass the statutory text. Nor is it clear that we can cure a breach by affirming an illegal sentence. But we need not reach either issue because the government did not breach the plea agreement.

Neither Day nor the district court even suggested that the plea agreement had been breached at any point in the proceedings before the district court—and for good reason. The agreement did not oblige the government to file a motion to depart as to count two. The agreement said nothing about section 3553(e), as it referred only to section 5K1.1 and Rule 35(b). Because "[s]ilence is not ambiguity" and "no promise was made about filing a [section] 3553(e) motion," we cannot construe the agreement to require the prosecution to file a motion to depart on count two. *United States v. Melton*, 861 F.3d 1320, 1327 (11th Cir. 2017). Moreover, the agreement confirmed the government's discretion to determine "the extent of any such departure request."

Day offers us two reasons to think that the plea agreement required the government to file a motion as to count two, neither of which is persuasive. First, Day argues that at the plea hearing the district court told her she might receive a "less severe" sentence than the guidelines recommended. Because the guideline sentence and the statutory minimum for count two were the same, she contends that the government's silence suggested it implicitly agreed

to file a motion allowing a "less severe" sentence. But the district court asked only a formulaic question to ensure that Day understood the guidelines are advisory. And the district court immediately clarified that she faced multiple statutory minimum sentences. Second, Day argues that the district court construed the motion broadly to avoid a breach of the plea agreement. But, as we have already explained, neither Day nor the district court suggested at the sentencing hearing that the government had breached the plea agreement. The district court said only that it "disagree[d]" with the government's interpretation of section 3553(e).

## IV. CONCLUSION

We **VACATE** the sentence as to count two and **REMAND** with instructions to resentence Day in accordance with this opinion.

24-13312                KIDD, J., Concurring                1

KIDD, Circuit Judge, Concurring:

In November 2020, Erika Day was battling a years-long drug addiction. And like every other person in her situation, she had a drug supplier. Unfortunately for Day, the police were monitoring her supplier when they saw her drive away from his residence at some point. They pulled her over and found methamphetamine and a gun in her vehicle—a bad combination, to be sure. But Day's lack of sophistication as a drug dealer is exhibited by one telling fact: She dumped the methamphetamine on her car's floorboard in a bungled attempt to dispose of the evidence.

Day pleaded guilty to the federal gun and drug charges, but the district court allowed her to remain on pretrial release before her sentencing. By all accounts, Day turned her life around. She enrolled in a year-long transitional program at the Lovelady Center. In that program, she took parenting, relapse prevention, and anger management classes. Day was randomly drug tested two to three times a month as part of the program, and, remarkably, she never tested positive. After completing the program, she remained employed by the Lovelady Center, where she was able to mentor other women who were undergoing similar life events. At her sentencing, Day testified that she maintained two jobs, paid off her fines, obtained a driver license for the first time in twelve years, purchased a vehicle, and secured stable housing. Perhaps most importantly, she had made significant progress in repairing her relationship with her two daughters.

2                          KIDD, J., Concurring                        24-13312

In addition to her personal progress, Day also assisted the government in its prosecutions of her drug suppliers. Notably, Day's sentencing was postponed by more than two years for this purpose. While Day was in the middle of drug-addiction treatment in Birmingham, she agreed to arrange for her own transportation four hours each way to the Mobile area to meet with federal agents, wear a wire, reenter a drug den, and participate in a controlled drug purchase. She also agreed to testify against multiple defendants. According to the government, Day's cooperation led to the indictment of two additional subjects on federal charges—both of whom subsequently entered guilty pleas. Additionally, she provided information about her previous interactions with another methamphetamine dealer who was already under federal indictment.

It is not often that a district court has the benefit of seeing what a defendant would do if given a second chance. Normally, the court just hopes for the best. But here, due to Day's cooperation with the government, the district court was able to observe Day's rehabilitative actions over the course of two years. And there is little more that could have been asked of her. The district judge, considering all the factors that Congress has instructed him to consider, decided that "[b]ecause of the work [she had] done, going to prison now is not going to be helpful to [her]. It's not going to be helpful to the community." So he sentenced Day to time served so that she could continue the remarkable progress that she had made over the prior two years.

24-13312                KIDD, J., Concurring                3

But that does not matter. By statute, only one person's opinion mattered that day: Gloria A. Bedwell's, the Assistant United States Attorney. Under the sentencing regime that Congress has established for consideration of assistance to the government, Ms. Bedwell, under the supervision of United States Attorney Sean P. Costello, had all the cards. Only she could allow the district court to impose the sentence that the court considered to be the most just. But she refused, and today's opinion affirms that she had the power to do so.

I concur with the majority opinion, as section 3553(e) and our precedents make clear that a district court cannot impose a sentence below a statutory mandatory minimum for one offense based on the government's substantial assistance motion for a different offense. But I join my colleague in noting that this "asymmetry warrants reflection." *United States v. Perez*, __ F.4th __, No. 23-12336 (11th Cir. Dec. 2, 2025) (Abudu, J., concurring). While our sentencing regime affords district courts with nearly unbounded discretion to impose higher sentences, it does not entrust them with the same discretion to impose lower sentences. Day's case "illustrates the consequences" of this asymmetry. *Id.*

Yet there remains one actor with nearly unbounded discretion both ways and who still has the opportunity to exercise that discretion in Day's case on remand: the federal prosecutor. I hope that Ms. Bedwell, or whomever succeeds her, uses the discretion afforded to her by the people of the United States to reach a just result in Day's case.